Mavis Athalene LEWIS,
Plaintiff–Appellant,

v.

William H. HILL, M.D., Hill Radiology
Associates, P.C., and Nashville Memori-
al Hospital, Defendants–Appellees.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Nov. 19, 1988.

Permission to Appeal Denied by
Supreme Court May 1, 1989.

James C. Dale, Jr. Nashville, for plain-
tiff-appellant.

Mary M. Schaffner, Nashville, for defen-
dant-appellee Hill.

William R. Willis, Jr., Nashville, for de-
fendant-appellee Memorial Hosp.

## OPINION

TODD, Presiding Judge.

The plaintiff, Mavis Athalene Lewis, has
appealed from a summary judgment dis-
missing her suit against the defendants,
William H. Hill, M.D., Hill Radiology Asso-
ciates, P.C., and Nashville Memorial Hospi-
tal for personal injuries sustained in a fall
during a radiological examination by defen-
dant, Hill, on the premises of Nashville
Memorial Hospital.

The uncontroverted facts are as follows:

On April 11, 1984, while a patient in the
defendant Hospital, plaintiff was taken to
the radiology department of the hospital
for a procedure called a myelogram, which
is an X-ray examination of the spine. Stan-
dard pre-procedural medications had been
ordered by plaintiff's treating physician.
Plaintiff was placed on an X-ray table by
an employee of the Hospital. Prior to the
procedure, defendant, Hill, talked to plain-
tiff and reviewed plaintiff's hospital chart
which contained no history of fainting.
The procedure required that the X-ray ta-
ble be tilted 90 degrees in each direction.
That is, at one time the head end of the
table rested on the floor with the table
perpendicular, and at another time the foot
end of the table was on the floor with the
table perpendicular. After injecting dye
into the plaintiff's spine, defendant grad-
ually moved the table to the second perpen-
dicular position which raised plaintiff to a
standing position with her face toward the

table and her feet resting on a foot rest at the end of the table on the floor. A fluoroscope machine or screen extended from the side of the table and around the back of plaintiff, so that plaintiff was surrounded on three sides, the table in front of her and the fluoroscope on one side of and behind her. The defendant, Hill, stood on the other side of plaintiff in the opening between the table and the fluoroscope. Hand grips were on the table for the use of plaintiff. The technician was not in close proximity because of the danger of repeated exposure to X-rays. Straps or other restraints were available, but not used. They are not ordinarily used to secure patients in position because of the need for the patient to move during the procedure.

After performing a portion of the procedure in an upright position, defendant, Hill, asked plaintiff, "Are you doing all right", and she answered, "Yes". At this point, plaintiff fainted and fell away from defendant and toward the opposite side of the space where she was standing.

Defendant, Hill, testified that the manner of her fall made it impossible for him to get to her in time to arrest her fall because of the arrangement of the fluoroscope and table and the direction of her fall. Plaintiff collapsed or fell to a sitting position and then fell backward, striking her head and disturbing the position of the needle in her spine.

The affidavit of defendant, Hill, contains the following:

... In my association with Ms. Lewis, I adhered to the applicable standard of care required of a radiologist performing a myelogram and exercised my best judgment in her behalf. That Ms. Lewis fell during the radiological procedure I performed on her was not the result of negligence or malpractice on my part.

The record contains the deposition of Dr. E. Kent Carter which contains some opinions of the standard of care exercised by defendant Hill. These will be examined in the course of this opinion.

Plaintiff has presented eight issues which are as follows:

1. Did the precautions taken for Plaintiff's safety when the myelogram was successfully performed on her at Saint Thomas Hospital, during which procedure her legs were strapped on the table and an attendant held a hand on her shoulder, represent the appropriate standard of care for the safety of patients in the performance of such procedures?

2. Being aware of the weakened condition of Plaintiff, of the drugs administered to her prior to undergoing the myelogram and the possibility that she could faint, was Dr. Hill negligent in raising the Plaintiff on the examining table to a perpendicular position, standing alone, unrestrained and unattended, for the performance of the myelogram at Nashville Memorial Hospital?

3. Was the fact that neither Dr. Hill nor the attendant furnished by the hospital were in position to reach and assist Plaintiff when she fainted and fell, evidence of their failure to take proper precautions for her safety?

4. The entire myelogram procedure being under the exclusive control of the Defendant Hill, does the fact that an injury to a patient does not ordinarily occur in the absence of negligence, raise a presumption of the negligence of Dr. Hill under Section 29–26–115(c), Tennessee Code Annotated, which he must rebut by competent evidence?

5. In the light of established facts and circumstances, do the self serving and sometimes conflicting statements of Dr. Hill amount to anything more than a denial of his negligence, thus raising a disputed issue?

6. On the facts of this case, is the negligence of the Defendants to be determined by expert testimony or according to the common knowledge of laymen?

7. Is the hospital chargeable with the negligence of its attendant or attendants who assisted Dr. Hill?

8. Are the circumstances of this case such that reasonable persons would differ as to whether or not Dr. Hill was negligent in providing for the safety of

the Plaintiff during the administration of the myelogram?

The above issues are not discussed separately in plaintiff's brief, hence they will not be so discussed in this opinion. Instead, the arguments presented by plaintiff will be discussed.

■ Plaintiff first argues that the negligence of defendants (Hill, Hill Associates and the Hospital) is not determined by any standard of professional care, but lies substantially within the common knowledge of ordinary laymen, and plaintiff is entitled to present her case to a jury for decision, citing *Baldwin v. Knight,* Tenn.1978, 569 S.W.2d 450. In that case, a piece of wire was projected by a lawnmower and embedded in the leg of plaintiff. At a hospital emergency room, one of the defendants treated the wound, but did not X-ray it. On the following day, the plaintiff returned to the emergency room complaining of continued pain, was diagnosed and advised but not X-rayed by the other defendant. Three days later, plaintiff returned to the emergency room where he was treated by his personal physician who X-rayed, found and removed the wire. The Trial Judge directed a verdict for the defendants because the report of the Medical Malpractice Review Board finding negligence was not sufficient to support a verdict. The Supreme Court reversed, calling attention to the statutory admissibility of the findings of the Medical Malpractice Review Board and, in addition, the testimony of plaintiff that he had complained to one of the doctors that, "there's something in there sticking me". The Court also called attention to *Haskins v. Howard,* 159 Tenn. 86, 16 S.W. 2d 20 (1929), in which a doctor failed to discover a pregnancy and operated for ovarian cyst and cited other authorities in which it was held that the jury as men of ordinary experience and affairs, are qualified to draw their own inferences as to malpractice without expert testimony in factual circumstances within the common knowledge of laymen. Each of said authorities has been examined and none has been found in which the facts comport with the facts of the present case.

In the present case, the defendant, Hill, was engaged in minute inspection and observation of an X-ray image which was produced as plaintiff moved her body in response to his directions. An ordinary layman, having no experience in such matters, would have no means of making an intelligent judgment as to the watchfulness which a physician could and should exercise under such conditions.

Neither would a layman have any means of judging the decision to refrain from using restraints which would have interfered with movements of the patients and would have to be released for each movement.

■ Plaintiff relies upon evidence of a subsequent myelogram by another physician during which restraints were used. The actions of a single physician on a single occasion subsequent to the injury do not establish a standard of care at the time of the injury. Moreover, "hindsight is clearer than foresight".

It is asserted that the defendant, Hill, should have required the hospital attendant to hold the patient to prevent a fall. The evidence shows that safety required the attendant to remain outside the range of the X-ray emissions. Moreover, it is not shown that the apparatus allowed any position for the attendant to so attend the patient. The patient was surrounded on three sides by the apparatus, and the physician stood on the fourth side "in the gap".

It is also insisted that the physician should have anticipated the fainting and fall of the patient. There is nothing in this record from which a layman would be qualified to conclude that a physician was negligent in failing to anticipate a fainting and fall under the circumstances.

■ Appellant's argument challenges the credibility of the affidavit of defendant, Hill, that he adhered to the applicable standard of care. His admission that the standard of care is flexible and that the actions of all doctors are not precisely uniform does not impeach his general conclusion as to the propriety of his actions.

Plaintiff asserts that there is a fair inference that defendant, Hill, was looking at

the fluoroscope monitor instead of the patient at the time the patient fell. Even if this be true, this is not shown to be negligence. There would be no occasion for either the doctor or the patient to be in the X-ray room if the doctor was required to look constantly at the patient and never at the indicia on the diagnostic apparatus.

Plaintiff relies upon the testimony of Dr. Carter as follows:

Now, his attention wasn't where it ought to have been when it happened, and that's what he did wrong, and I don't know what he was doing when he did it, but if it hadn't been somewhere else, it wouldn't have happened, and if he wasn't there, he should have had his technician or his assistant doing what I said he ought to have been doing if he had to do something else.

The quoted testimony is by a physician who practiced in Kingsport, Tennessee, and nothing is cited from his testimony which would satisfy the statutory requirement that the plaintiff in a medical malpractice case prove "the recognized standard of acceptable practice in the profession and specialty thereof, if any, that the defendant practices in the community in which he practices or in a similar community at the time the alleged injury or wrongful action occurred; (and) that the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard". T.C.A. § 29–26–115.

The testimony of a physician as to what he would do or his opinion of what should have been done does not prove the statutory standard of medical practice.

Plaintiff next relies upon the testimony of the X-ray technician that, if he sees a patient about to fall, he will help the patient. This is a commonly accepted standard of human conduct, but is not evidence of the negligence of a doctor's own conduct or of his control and direction of the technician, or the negligence of the technician.

Plaintiff next criticizes the conclusionary statements of the defendant, Hill, but cites no authority holding that such statements do not satisfy the requirements of the statute. Plaintiff cites *Knapp v. Holiday Inns, Inc.*, Tenn.App.1984, 682 S.W.2d 936,

wherein this Court stated that doubt as to credibility of a material witness will create a genuine issue of fact sufficient to prevent a summary judgment. Doubt as to credibility of a witness for this purpose does not arise from the mere fact that the witness is a party or otherwise interested in the result. In the cited case, the doubt arose from the contradiction between the testimony of witnesses that a party did not appear intoxicated and the actual behavior of the party at or near the time. The opinion is not authority for disregarding an uncontradicted affidavit because it is the affidavit of a party.

Plaintiff argues that the negligence of defendant, Hill, was his failure to use basic common sense in providing for plaintiff's safety while she was undergoing the myelogram procedure. As heretofore stated, the circumstances of the injury involved a highly technical procedure as to which a layman is not qualified to determine what is or is not due care. The care which should be exercised under the circumstances is simply not within the experience or knowledge of a layman. *See Murphy v. Schwartz*, Tenn.App.1986, 739 S.W.2d 777 (fall from cot after stroke).

The liability of all defendants rests upon the acts or omissions of the hospital attendant or of the defendant, Hill, who was in charge in the X-ray room. He was an employee of Hill Radiology Associates, P.C. The hospital employee was under his direction, and no negligence is shown on the part of the hospital or its employee. Summary judgment was proper as to all defendants.

The judgment of the Trial Court is affirmed. Costs of this appeal are taxed against the appellant. The cause is remanded to the Trial Court for such further proceedings, if any, as may be necessary and proper.

Affirmed and remanded.

LEWIS and CANTRELL, JJ., concur.