# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

June 12, 1998

Cecil W. Crowson
Appellate Court Clerk

RUTH PHARES,                          )
                                      )
    Plaintiff/Appellant,              )
                                      )       Appeal No.
                                      )       01-A-01-9709-CV-00485
VS.                                   )
                                      )       Davidson Circuit
                                      )       No. 96C-3072
KITTIE MYATT, ED.D.,                  )
                                      )
    Defendant/Appellee.               )

APPEALED FROM THE CIRCUIT COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE MARIETTA M. SHIPLEY, JUDGE

JAMES L. HARRIS
2400 Crestmoor Road
Nashville, Tennessee 37215
    Attorney for Plaintiff/Appellant

NOEL F. STAHL
E. TODD PRESNELL
Suite 2700, Nashville City Center
511 Union Street
Nashville, Tennessee 37219
    Attorney for Defendant/Appellee

AFFIRMED AND REMANDED

BEN H. CANTRELL, JUDGE

CONCUR:
TODD, P.J., M.S.
KOCH, J.

# O P I N I O N

A licensed practical nurse filed suit against a psychological examiner who evaluated her after the nurse's license was suspended for professional misconduct. The plaintiff claimed that as a result of a negligent report by the examiner, her license reinstatement was conditioned on the completion of unnecessary treatment for drug and alcohol abuse, leading her to suffer severe emotional distress. The trial court granted summary judgment for the defendant psychological examiner. We affirm.

## I. The Facts

Plaintiff Ruth Phares is a licensed practical nurse. She worked as a nursing shift supervisor at Vanco Manor Nursing Home in Goodlettsville, where she supervised the work of four nurses' aides in the care of 64 patients, and dispensed medication pursuant to doctors' orders. In March of 1994, she was fired by the home's Director of Nursing for making various charting errors, failing to follow protocols, and failing to administer medication properly.

The Tennessee Board of Nursing subsequently brought charges against Ms. Phares for unprofessional conduct and unfitness to engage in the practice of nursing. She obtained legal counsel, who advised her to waive her rights to a formal hearing and sign an Agreed Order of Suspension.

The terms of the Agreed Order, which was signed in June of 1995, were that Ms. Phares would accept the allegations against her as true, and her license would be suspended for six months, during which time she was to submit to a psychological examination and drug evaluation, conducted by the Tennessee Nursing Foundation's Peer Assistance Program (PAP). If those requirements were met, she could appear before the Board in December and request the lifting of her suspension.

Ms. Phares contacted PAP, which referred her to defendant Kittie Myatt, Ed.D., for evaluation. After filling out a five-page intake questionnaire and signing a release form, Ms. Phares took two standardized written tests, and submitted to two interviews conducted by Dr. Myatt: a clinical interview designed to elicit information about substance abuse or dependence, and a psychosocial interview.

During the interviews, Ms. Phares advised Dr. Myatt that she was an insulin-dependent diabetic, and suggested that her employment problems may have stemmed, at least in part, from her condition. Dr. Myatt graded the tests and evaluated the interviews with the participation of her supervisor, a licensed psychologist. Dr. Myatt then prepared the report which is the source of contention in the present action.

Dr. Myatt's report discussed in detail the results and implications of the various tests and interviews she conducted, and ended with three conclusions and four recommendations. Ms. Phares' grievance stems from the conclusion that "the possibility of alcohol abuse as a contributing factor in her performance problems cannot be ruled out," and from recommendations that she undergo random breath tests for alcohol abuse, and random drug screening "to confirm her self-reported information that she is negative for substance abuse." Other recommendations included outpatient psychotherapy and proper medical care and monitoring of her diabetes.

Dr. Myatt's report was submitted to PAP. The director of PAP summarized Dr. Myatt's concerns and recommendations for the Department of Health, but did not send a copy of the report to the Department or to the Board of Nursing, since it contained private information about Ms. Phares that was not relevant to the matter at hand.

On December 8, 1995, the Board of Nursing met and agreed to reinstate Ms. Phares' nursing license on a probationary basis, as long as she met seven requirements, which included maintaining a contract with PAP, and submitting quarterly reports of urine drug screens. A contract with PAP implies attendance at two 12-step meetings weekly.

On August 22, 1996, Ms. Phares filed a complaint alleging that she does not have and that she has never had an alcohol or substance abuse problem, that the tests she took did not indicate any such problem, and that in evaluating her and in reporting her findings to Ms. Phares' detriment, Dr. Myatt failed to meet the standard of care for her profession. Damages alleged included severe emotional distress and having to undergo unnecessary treatment for drug and alcohol abuse. Ms. Phares asked for $300,000 in compensatory damages. The defendant filed a motion for summary judgment, which the court granted on April 15, 1997. This appeal followed.

## II. Summary Judgment

Summary judgment is "an important vehicle for concluding cases that should be resolved on legal issues alone. *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1992). It may only be granted where the proof shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn.R.Civ.P. 56.04; *Taylor v. Nashville Banner Publishing Co.,* 573 S.W.2d 476 (Tenn. App. 1978).

A "material fact" is, for the purposes of a summary judgment motion, one that relates directly to the claim or defense embodied in the motion. To be material, a fact at issue must be essential to the legal questions that will ultimately decide the case. *Rollins v. Winn-Dixie,* 780 S.W.2d 765 (Tenn. App. 1989). Thus, a fact that

may be of surpassing importance to one of the parties will not be material if raising that fact does not alter the parties' legal positions.

To proceed on a motion for summary judgment, the moving party usually supports her contention that there are no genuine issues of material fact with sworn affidavits. Such affidavits must be made on personal knowledge, setting forth facts that would be admissible in evidence. Sworn or certified copies of all papers referred to in an affidavit should be attached or served with it. Tenn.R.Civ.P. 56.06. The opponent of the motion may then respond with counter-affidavits or other competent proof to demonstrate that there are indeed genuine disputes as to material facts.

In considering a motion for summary judgment, the trial court must view the evidence in the light most favorable to the opponent of the motion, and must draw from it all the legitimate conclusions of fact that favor the opponent. *National Mfg. Co. v. Washington*, 744 S.W 2d, 574 (Tenn. App. 1987); *Gray v. Amos*, 869 S.W.2d 834 (Tenn. App.1993). No presumption of correctness attaches on appeal to decisions granting summary judgment, because such judgments involve only questions of law. *Roberts v. Roberts*, 845 S.W.2d 225 (Tenn. App.1992); *Hembree v. State*, 925 S.W.2d 513 (Tenn. 1996).

### III. Professional Malpractice

In her complaint, Ms. Phares asserted that although she does not have any alcohol or substance abuse problems, Dr. Myatt's conclusions and recommendations, which were premised on the possible existence of such problems, were negligent and "did fall short of the standard of care for professionals in this area." She further claimed that Dr. Myatt "did not exercise the degree of care or skill or possess the degree of knowledge ordinarily exercised by others of this profes-

sion . . . ."

Ms. Phares' claim is thus one for professional malpractice. To establish such a claim, the plaintiff must be prepared to offer competent testimony as to the recognized standard of acceptable practice in the profession, and that the defendant failed to act with ordinary and reasonable care in accordance with that standard. Tenn. Code Ann. § 29-26-115(a).

Such testimony must come from one who is familiar with the recognized standard of practice for the profession in question. In the case of a claim against a person who practices in a health care profession requiring licensure under the laws of this state (such as a psychological examiner, see Tenn. Code Ann. § 63-11-207), this means a person licensed in the same or a similar specialty, who practiced his profession in Tennessee or a contiguous state in the year preceding the injury or wrongful act complained of. Tenn. Code Ann. § 29-26-115(b).

The requirement of expert testimony can be dispensed with in situations where the matter in dispute is within the common knowledge of the ordinary layman. See *Baldwin v. Knight*, 569 S.W.2d 450 (Tenn. 1978). This so-called "common knowledge exception" only applies to the most obvious forms of negligence, acts "so blatant that all mankind knows such things are not done absent negligence." *Murphy v. Schwartz*, 739 S.W.2d 777 (Tenn. App. 1986). We do not believe that the common knowledge exception applies to this case.

Dr. Myatt submitted an affidavit which set out in great detail her interactions with Ms. Phares, including the results of the written tests and the content of the interviews. She also discussed the reasoning process she followed in reaching the disputed conclusions and recommendations.

The defendant acknowledged in her affidavit (as she did in her report) that Ms. Phares' profile on the test called the "Substance Use Disorders Diagnostic Schedule" was negative for substance abuse but high on defensiveness. Dr. Myatt noted that the high defensiveness score had the effect of casting doubt on the validity of the rest of the test. The MCMI-III test was also negative for alcohol or drug dependence, but Ms. Phares' score on that test was high enough to indicate "features" consistent with alcohol dependence, rather than "traits" of such a problem, or a full-blown "disorder," which would require higher scores.

Dr. Myatt observed that Ms. Phares appeared to slur her speech during the interview, had poor memory ability, was unable to give a consistent chronological history, and denied the seriousness of her patient care problems. The defendant stated that the test results and her observations were sufficient to support the conclusion that "the possibility of alcohol abuse as a contributing factor in her performance problems cannot be ruled out." We note that the affidavit of the director of PAP, the organization which ordered the evaluation, states that the primary goal of PAP is to protect the public from impaired practitioners, and secondarily to assist impaired practitioners in overcoming psychological or physical problems, or problems of substance abuse.

Dr. Myatt affirmed that in dealing with Ms. Phares, she fully complied with the applicable standard of practice. Dr. Myatt's testimony as to her own compliance with that standard was certainly competent under Tenn. Code Ann. § 29-25-115(b), as she was a licensed psychological examiner who had been practicing that profession in Tennessee for at least ten years.

Ms. Phares responded with the affidavit of William D. Kenner, M.D., who first saw her on August 7, 1996, fifteen days before she filed her complaint. Dr. Kenner stated that he was a psychiatrist familiar with the recognized standard of

acceptable professional practice for Mental Health Professionals, and that he interviewed Ms. Phares and referred her to Pam Auble, Ph.D., a clinical psychologist, for an evaluation.

Dr. Kenner noted that Dr. Myatt did not evaluate Mrs. Phares' diabetic status, and did not consult with a licensed physician about the impact of her diabetes on her professional conduct. He stated that in his professional opinion, the most likely cause for Ms. Phares' problems at Vanco Manor were that the enormous responsibilities of her position left her no time to monitor her own glucose levels, leading to physical symptoms that rendered her unable to discharge her duties correctly. Significantly however, Dr. Kenner did not state that Dr. Myatt's conduct violated the standard of practice for psychological examiners.

The Forensic Psychological Evaluation that was prepared by Dr. Auble was attached as an exhibit to Dr. Kenner's affidavit. The evaluation was based upon six tests, which included a clinical interview. Dr. Auble concluded from those tests that Ms. Phares was a woman with strong dependency needs, who felt overwhelmed by stress and by continuing grief over the death of her parents. She also found that Ms. Phares was very defensive about admitting to faults or weaknesses, but found no evidence of alcohol or drug abuse.

Dr. Auble's evaluation did not deal at all with the question of what constituted the standard of practice for psychological examiners, or whether Dr. Myatt had violated that standard in preparing her own report. Further, the evaluation was not a sworn statement, and was not certified, as is required by Tenn. R. Civ. P. 56.06. The defendant argues that it was thus incompetent evidence as a matter of law.

Putting aside the question of the competence of Dr. Auble's evaluation for the moment, it is clear that either the evaluation or the affidavit of Dr. Kenner would

have been sufficient to raise a genuine issue of fact as to whether drug or alcohol abuse played a rule in Ms. Phares' conduct at Vanco Manor, even if that issue had not already been raised by the tentative nature of Dr. Myatt's conclusion.

But although that issue may be of surpassing importance to Ms. Phares, it is not material to her claim against Dr. Myatt, absent some proof that Dr. Myatt violated the standard of practice. The fact that Dr. Myatt came to a different conclusion than did another practitioner is not sufficient to raise a question of professional malpractice, so long as Dr. Myatt exercised the degree of care normally exercised by psychological examiners in the practice of their profession. *See Methodist Hospital v. Ball*, 362 S.W.2d 475 (Tenn. App. 1961); *Lewis v. Hill*, 770 S.W.2d 751 (Tenn. App. 1988). There appears to be no proof in the record that Dr. Myatt's actions deviated in any way from the standards established by her profession.

**IV. Other Issues**

The defendant has asserted several other grounds for summary judgment. These include the immunity from suit extended to medical review committees and peer review committees under Tenn. Code Ann. § 63-6-219 for actions taken in good faith and without malice; a purported waiver of liability contained in the release that Ms. Phares signed prior to being evaluated by Dr. Myatt; and the fact that Dr. Myatt's report was not actually furnished to the Nursing Board, and thus (defendant argued) could not be considered a cause in fact of any injury suffered by Ms. Phares as a result of the Nursing Board's action.

We pretermit all these arguments, as they are not necessary for resolution of this case, once we have determined that Ms. Phares had failed to overcome her burden on the motion for summary judgment to bring forth proof that the actions of Dr. Myatt constituted a deviation from the standard of practice for psychological examiners.

The defendant has also asked this court to impose sanctions on the plaintiff for frivolous appeal under Tenn. Code Ann. § 27-1-122.  After a thorough examination of the record, we have determined that this is not an appropriate case for the imposition of such sanctions.

**V.**

The judgment of the trial court is affirmed.  Remand this cause to the Circuit Court of Davidson County for any further proceedings consistent with this opinion.  Tax the costs on appeal to the appellant.

_____
BEN H. CANTRELL, JUDGE

CONCUR:

_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION


_____
WILLIAM C. KOCH, JR., JUDGE