IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 10, 2012 Session

**SUZANNE RENEE WILLIAMS-ALI AS PERSONAL REPRESENTATIVE OF THE ESTATE OF RUBY LEE COFER WILLIAMS v. MOUNTAIN STATES HEALTH ALLIANCE**

**Appeal from the Circuit Court for Washington County**
**No. 29251      Thomas J. Seeley, Jr., Judge**

**No. E2012-00724-COA-R3-CV-FILED-JANUARY 30, 2013**

This is a case alleging negligence by defendant, Mountain States Health Alliance, which resulted in injury to a patient, Ruby Williams.[1]  Ms. Williams fell off a table while she was undergoing myocardial perfusion imaging, also known as a nuclear stress test.  Mountain States Health Alliance asserted that Ms. Williams's complaint sounded in medical malpractice instead of ordinary negligence, and asked for summary judgment because Ms. Williams had not complied with the filing requirements of the medical malpractice statute. The trial court granted summary judgment, finding that the case involved a medical malpractice claim rather than an ordinary negligence claim.  Ms. Williams's Estate appeals. We affirm the trial court's ruling.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., P.J. and D. MICHAEL SWINEY, J., joined.

Robert Payne Cave, Jr., Kingsport, Tennessee, for the appellant, Suzanne Renee Williams-Ali.

Frank H. Anderson, Jr., Johnson City, Tennessee, for the appellee, Mountain States Health Alliance.

---

[1]Ms. Williams filed the original complaint, but she died while this action was pending.

## OPINION

## I. BACKGROUND

After the death of Ms. Williams ("Decedent"), her daughter and personal representative of the estate, Suzanne Renee Williams-Ali, was substituted as plaintiff ("the Estate"). The Estate filed this action against the defendant medical facility, Mountain States Health Alliance ("MSHA").

The complaint alleged that Decedent was 68 years old at the time of her injury, and that while she was of normal height, she weighed in excess of 300 pounds. The complaint alleged that Decedent had also suffered a previous stroke, resulting in paralysis on the right side of her body. It was further alleged that Decedent was "prepared by MSHA . . . for myocardial perfusion imaging to be conducted by the Defendants.[2] While under the supervision and direct control of the Defendants, [Decedent] was placed on a table by the Defendants' employees for the purposes of myocardial perfusion imaging. [Decedent] fell off the table on her right side onto the floor" and sustained injuries. The complaint alleged that MSHA failed to exercise reasonable care and failed to properly secure Decedent to the table "being well aware of her previous medical condition."

MSHA filed a Motion to Dismiss, asserting that Decedent's claims sounded in medical malpractice rather than ordinary negligence. MSHA argued that Decedent had failed to comply with the requirements of the medical malpractice statute (specifically Tennessee Code Annotated, sections 29-26-121 and 122) regarding pre-suit notice and the filing of a certificate of good faith. MSHA later filed a motion seeking to convert the motion to dismiss to a motion for summary judgment, which the trial court granted. MSHA filed the requisite statement of facts, as well as an affidavit of Norwood Moore.

In his affidavit, Moore stated that he was one of the nuclear medicine technologists ("NMT") who performed the nuclear stress test (or "scan") on Decedent. Moore attested that he had been a NMT for 29 years. Moore said that he and another experienced NMT, Eric Hassler, were monitoring Decedent during the scan. Moore asserted that their duties that day not only involved performance and interpretation of the scan, but also required them to assess Decedent prior to the scan to determine the proper "transfer, placement, positioning, securing and monitoring of the patient."

Moore stated that he had received training and education on how to properly assess a patient for transfer onto the scan table, as well as on the proper way to position and secure

_____

[2] The complaint named defendants in addition to MSHA, but they were dismissed from the lawsuit.

the patient for the scan. Moore asserted that he had also been taught how to monitor the patient during the scan and that all of these duties were part of his job as a NMT. Moore said that he was taught to assess the patient based on her age, mental alertness, height, weight, and any physical or mental impairments.

Moore related that he and Hassler determined that Decedent was 68 years old, that she was alert and oriented, and that she was morbidly obese (at approximately 340 pounds). Moore stated that they also considered the fact that Decedent had paralysis on her right side due to a previous stroke. Based on her condition, Moore and Hassler determined that Decedent should only undergo the resting phase of the test on that day and that the presence of both technologists would be required to monitor her. Moore said that patients were normally placed with both arms above the head for this test, but due to Decedent's condition, they decided to position her with her left arm above her head and her right arm down at her side.

Moore related that they decided to secure Decedent to the table using the safety strap that was attached to the table frame. Moore said that they also decided that it was best, given Decedent's condition, to place themselves on opposite sides of the table, and within 18 inches of Decedent. Moore stated that all of these factors had to be evaluated and determined by a trained NMT in order to perform the scan and required knowledge and experience not possessed by a layperson.

Moore asserted that Decedent was in the process of having the scan when she made a sudden movement and that due to her obesity, the safety strap was torn away from the table. Moore stated that Decedent's sudden movement caused her to roll to the right and fall to the floor.

The Estate filed a statement of facts, disputing the factual statements presented by MSHA, and filed an affidavit of Debbie Williams, who was one of Decedent's daughters. Williams stated that she was present when Decedent was secured to the table for the scan and that the process took less than one minute. Williams opined that anyone could have performed this task. The Estate also filed an affidavit from Dr. John Cave, an ER physician licensed in North Carolina. Dr. Cave stated that he was familiar with the procedure of placing patients on and securing patients to exam tables. Dr. Cave asserted that this process required no specialized knowledge and could be done by an unskilled worker.

Ms. Williams-Ali later filed her own affidavit and stated that she had been employed by Johnson City Medical Center since 1981. Ms. Williams-Ali said that she worked for the transport services department from 1983 to 1987 and had transported patients by wheelchair, bed, and stretcher. She stated that part of her job was to secure the patient to the stretcher

or exam table to prevent the patient from falling and that she received no formal education or training regarding same.

The Estate also filed an affidavit from Williams Andrews, PT, who stated that he was a licensed physical therapist. Andrews asserted that his job required him to place and secure patients on exam tables and that this duty did not require any scientific training or education. Andrews said that this task could be performed by "unskilled assistants who are trained in rudimentary restraint techniques during a short orientation."

The trial court granted summary judgment to MSHA, ruling that the gravamen of the complaint sounded in medical malpractice rather than ordinary negligence. Since the Estate had not complied with the filing requirements of the medical malpractice statute, the trial court held that summary judgment was proper. The Estate filed a motion based on Rule 59 of the Tennessee Rules of Civil Procedure, asking the court to amend or reconsider its findings, and attached an affidavit from Alfio Banegas, a NMT from New York. The Estate asserted that this affidavit was filed to show that medical training and experience was not necessary to place or secure a patient on the scan table for a nuclear stress test.

Banegas stated that he had been a NMT for 12 years. Banegas asserted that he had read Moore's affidavit and disagreed with Moore's statement that placing or securing Decedent on the scan table required the knowledge and skills of a NMT. Banegas maintained that the scan table used for this type of scan was called a Siemens e.cam Camera System, and that it was similar to any other type of exam table. Banegas opined that placing the patient on the table, positioning her, and securing her did not require special skill or training, and could be done by a layperson.

MSHA opposed the Rule 59 motion, arguing that the Estate had failed to show why this affidavit could not have been produced before summary judgment was granted. In its ruling from the bench, the trial court stated that the Banegas affidavit could not be considered because Banegas was not from Tennessee or a contiguous state. In its written order, the trial court corrected that ruling and stated,

> the Court's opinion remains that the Plaintiff's cause of action sounds in medical malpractice rather than ordinary negligence for the reasons previously cited herein and that the additional Affidavit submitted by the Plaintiff subsequent to the Court's granting of the Defendant's Motion for Summary Judgment on November 14, 2011 has not changed this Court's opinion. Plaintiff's action fails to comply with the Tennessee Medical Malpractice Act, T.C.A. §29-26-115, et seq.

-4-

The court thus denied the Rule 59 motion.  This timely appeal followed.


## II.  ISSUES

We restate the issues raised on appeal by the Estate as follows:

A.     Whether the trial court erred in granting summary judgment to MSHA based on its ruling that the claim was actually a claim of medical malpractice.

B.     Whether the trial court erred in denying the Estate's Rule 59 motion.


## III.  STANDARD OF REVIEW

This appeal arises from a grant of summary judgment.  Summary judgment is appropriate when the moving party establishes that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law.  Tenn. R. Civ. P. 56.04.  It is appropriate in "virtually any civil case that can be resolved on the basis of legal issues alone."  *Pendleton v. Mills*, 73 S.W.3d 115, 121 (Tenn. Ct. App. 2001).

Summary judgments do not enjoy a presumption of correctness on appeal.  *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003).  Since the resolution of a motion for summary judgment is a matter of law, we review the trial court's judgment de novo with no presumption of correctness.  *Id*.  This court must make a fresh determination that the requirements of Rule 56 have been satisfied.  *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1977).  In doing so, this court must consider the pleadings and evidence in the light most favorable to the nonmoving party and resolve all inferences in that party's favor.  *Id.* at 51.

Regarding plaintiff's motion pursuant to Rule 59 of the Tennessee Rules of Civil Procedure, the trial court has great discretion in ruling on such motions, and its judgment will not be overturned absent a showing of abuse of discretion.  *Discover Bank v. Morgan,* 363 S.W.3d 479, 487 (Tenn. 2012).  Abuse of discretion is found when the trial court "applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that causes an injustice to the complaining party."  *Id.*  Under an abuse of discretion standard, the trial court's ruling will be upheld if "reasonable minds can disagree as to [the] propriety of the decision made."  *Id.*

## IV. DISCUSSION

### A.

The Estate argues that the trial court's grant of summary judgment to MSHA was in error because the claim was one of ordinary negligence rather than medical malpractice. The Estate asserts that the affidavits establish that the act of securing the patient to the table did not require specialized skill or training and could have been done by a layperson with no medical knowledge. The argument then follows that if the affidavits are viewed in the light most favorable to the Estate, there can be no question that the claim sounded in ordinary negligence. Accordingly, if the claim was one of ordinary negligence, the trial court erred in granting summary judgment based on requirements found in the medical malpractice statute.

However, the Estate fails to recognize that the question of whether the gravamen of the complaint is medical malpractice or ordinary negligence is a question of law. *Gunter v. Lab. Corp. of America*, 121 S.W.3d 636, 638 (Tenn. 2003). As such, it could be properly adjudicated via a motion to dismiss, motion for summary judgment, or other dispositive motion. *Id.*

As our Supreme Court has previously stated, "[c]ases involving health or medical entities do not automatically fall within the medical malpractice statute." *Draper v. Westerfield*, 181 S.W.3d 283, 290 (Tenn. 2005). Rather, the court must review the claim and determine whether the gravamen of the complaint is medical malpractice or negligence, based on certain factors. Our Supreme Court recently wrote a lengthy and well-reasoned opinion dealing with the issue of distinguishing those claims, which gives this court guidance. *See Estate of French v. Stratford House*, 333 S.W.3d 546, 555-60 (Tenn. 2011).

In the *French* case, the decedent's estate filed an action against the nursing home where decedent had been living prior to her death. The estate alleged that decedent's death was caused by the negligent care she received from said nursing home. Decedent had multiple health issues and was basically immobile, thereby making her susceptible to pressure ulcers. This susceptibility was documented by the nursing home, and a treatment plan was prescribed to prevent these ulcers from developing. Decedent was to be turned and/or repositioned by nursing staff on a frequent basis, was to be kept clean and dry, and was to be provided with adequate nutrition and hydration. *See French*, 333 S.W.3d at 550.

Despite the treatment plan, decedent's condition deteriorated and she eventually had to be hospitalized. Upon her hospital admission, decedent was found to have a number of pressure ulcers which had become infected. Decedent died at the hospital, and her cause of

death was listed as sepsis. Her estate then filed its claim, alleging that the nursing home was negligent in its treatment of decedent. The trial court and this court both held that the gravamen of the complaint sounded in medical malpractice. *See French*, 333 S.W.3d at 550-53.

The Supreme Court began its analysis of whether the claims were medical malpractice or ordinary negligence by looking at the proof needed for each type of claim, *i.e.* a showing of duty, breach, causation, and harm for negligence claims, versus a showing of conduct by defendant falling below the recognized standard of care, which causes injury, for medical malpractice claims. *See French*, 333 S.W.3d at 554. The Court noted that because medical malpractice is a category of negligence, the distinction between the two is "subtle," and stated that there is "no rigid analytical line separating" these causes of action.[3] *Id.* at 555. The Court reviewed prior cases on the subject, and recalled that medical malpractice typically encompassed any claim of negligent medical treatment, i.e. conduct bearing a substantial relationship to the rendition of medical treatment by a medical professional. *Id.* However, the Court noted that the medical malpractice statute could also apply to non-physicians and stated that the distinction turned on "whether the acts or omissions complained of involve a matter of medical science or art requiring specialized skills not ordinarily possessed by lay persons . . . ." *Id.* at 556.

The Court went on to explain:

It is, of course, the responsibility of the courts to ascertain the nature and substance of a claim. The designation given those claims by either the plaintiff or the defendant is not determinative. For example, even though the Administratrix in this case made reference to neither the [medical malpractice statute] nor the term "medical malpractice" in the complaint, the requirements of the [medical malpractice statute] apply if, in fact, the factual basis for the claim sounds in medical malpractice. Nevertheless, a single complaint may be founded upon both ordinary negligence principles and the medical malpractice statute. The [medical malpractice statute] applies only to those alleged acts that bear a substantial relationship to the rendition of medical treatment by a

_____

[3] Perhaps because of the confusion this question has caused, the medical malpractice statute was amended effective October 2011. The statute now defines "health care provider" as any "employee of a health care provider involved in the provision of health care services, including, but not limited to, physicians, nurses, licensed practical nurses, advance practice nurses, physician assistants, nursing technicians, pharmacy technicians, orderlies, certified nursing assistants, technicians and those physicians and nurses employed by a governmental health facility." Tenn. Code Ann. § 29-26-101(a)(2)(D). The statute goes on to define "health care services" to include care by any such employee, including "staffing, custodial or basic care, positioning, hydration and similar patient services." Tenn. Code Ann. § 29-26-101(b).

medical professional, or concern medical art or science, training, or expertise. If there are additional acts or omissions alleged that do not bear a substantial relationship to medical treatment, require no specialized skills, or could be assessed by the trier of fact based upon ordinary everyday experiences, then the claims may be made under an ordinary negligence theory.

*Id.* at 557.

The Court opined that claims that the nursing home was negligent in assessing the decedent's condition, in developing her initial plan of care, and in properly updating that plan to conform to changes in her condition, would all fall under the medical malpractice category. *Id.* at 558. By contrast, claims that basic care (such as keeping decedent clean and dry) was not provided pursuant to the plan of care due to a lack of training, understaffing, or other causes, would sound in ordinary negligence. *Id.* at 559. The Court quoted with approval from a Wisconsin Supreme Court opinion as follows:

'If the patient requires professional nursing or professional hospital care, then expert testimony as to the standard of that type of care is necessary.' However, if the patient requires nonmedical, administrative, ministerial or routine care, the standard of care need not be established by expert testimony.

*Id.* at 559 (quoting *Kujawski v. Arbor View Health Care Ctr.*, 139 Wis.2d 455, 407 N.W.2d 249, 252 (1987) (citations omitted)).

In this case, the trial court did not err in holding that the gravamen of the complaint sounded in medical malpractice. Decedent was actually in the process of undergoing a nuclear stress test when her injury occurred. She had been assessed by the Nuclear Medicine Technologists performing the test, based on their training and experience, and they had made determinations regarding her physical size and condition and her mental alertness. Based on their assessment, which included recognition of her partial paralysis, they made the determination that she should be positioned with her left arm over her head and her right arm at her side, with her body secured by a safety strap, for completion of the scan. They had also made the determination that they should both monitor her during the test and should remain within 18 inches of the table, one on each side. It was only after these determinations were made and Decedent's test had begun, that her injury occurred. As such, there is no question that Decedent was receiving professional care at the time and that the alleged acts bore a substantial relationship to the rendition of medical treatment by a medical professional, and/or concerned medical art or science, training, or expertise. The assessment and care provided by the NMTs would obviously be beyond the ordinary, every day knowledge or experience of a layperson.

The assessment and care provided by the NMTs in this case goes well beyond the type of "basic" or "routine non-medical" care that the Supreme Court referred to in *French* as falling within the category of ordinary negligence. *See French*, 333 S.W.3d at 560. Similarly, other cases which have held that the claims involved sounded in ordinary negligence rather than malpractice involved factual situations where there was an injury to a patient that was unrelated to the performance of an actual medical service that required specialized skill or training. *See, e.g., Vice v. Elmcroft of Hendersonville,* No. M2010-01148-COA-R3-CV, 2011 WL 3672048, *13 (Tenn. Ct. App. Aug. 22, 2011) (negligent admission by non-medical personnel sounds in ordinary negligence, as does failure by staff to do prescribed patient checks and fill out reports); *Brister v. HCA Health Servs. of Tennessee,* No. M2010-01996-COA-R3-CV, 2011 WL 2395218, *5 (Tenn. Ct. App. June 8, 2011) (alleged lack of supervision of a violent patient/understaffing such that patient was able to attack the plaintiff constitutes ordinary negligence); *Smartt v. NHC Healthcare*, No. M2007-02026-COA-R3-CV, 2009 WL 482475, *9 (Tenn. Ct. App. Feb. 24, 2009) ( alleged lack of "custodial services" such as bathing and grooming would fall within ordinary negligence); *Turner v. Steriltek, Inc.,* No. M2006-01816-COA-R3-CV, 2007 WL 4523157, *8 (Tenn. Ct. App. Dec. 20, 2007) (ordinary negligence where surgical instruments were not sterilized prior to surgery); *Peete v. Shelby Cnty. Health Care Corp.,* 938 S.W.2d 693, 696 (Tenn. Ct. App. 1996) (ordinary negligence where a technician was removing an unused suspension bar from the hospital bed above the patient and dropped it on the patient's head); *Franklin v. Collins Chapel Connection Hosp.,* 696 S.W.2d 16, 20 (Tenn. Ct. App. 1985) (ordinary negligence where a patient was scalded during bathing).

The case of *Lewis v. Hill,* 770 S.W.2d 751 (Tenn. Ct. App. 1988), involves a factual situation that is extremely similar to the case at bar. In *Lewis*, the plaintiff was a hospital patient who was taken to the radiology department for a myelogram (an X-ray examination of the spine). The radiologist talked to the plaintiff and reviewed her chart, which indicated no history of fainting. The radiologist then positioned plaintiff for the test, a portion of which had to be performed with plaintiff in a standing position. While there were safety straps available, they were not used. The radiologist stated that the straps were ordinarily not used with this type of test because the patient needed to be able to move during the procedure. *Lewis,* 770 S.W.2d at 752.

While undergoing the test, plaintiff fainted and fell backward, striking her head and disturbing the needle that was in her spine. This court ruled that her claim of negligence against the radiologist (for failing to properly secure her) would fall under the category of medical malpractice, rather than ordinary negligence. This court stated:

> the defendant, Hill, was engaged in minute inspection and observation of an
> X-ray image which was produced as plaintiff moved her body in response to

his directions. An ordinary layman, having no experience in such matters, would have no means of making an intelligent judgment as to the watchfulness which a physician could and should exercise under such conditions.

Neither would a layman have any means of judging the decision to refrain from using restraints which would have interfered with movements of the patients and would have to be released for each movement.

*Id.* at 753.

Similarly, here, the NMTs were called upon to make decision regarding how Decedent should be positioned and secured to the table for the scan. They made such decision relying upon their training, expertise, and experience. This involved knowledge and judgment that would be outside the realm of that possessed by ordinary laypersons. Accordingly, the trial court did not err by ruling that the gravamen of the complaint sounded in medical malpractice and dismissing the complaint based upon the Estate's failure to comply with the requirements of the medical malpractice statute.

B.

The Estate also argues that the trial court erred in failing to grant the Rule 59 motion. The Estate asserts that if the trial court properly considered the affidavit of Alfio Banegas, a NMT from New York, which was attached to the motion, then the court would have ruled that the claim sounded in ordinary negligence.

Once again, the Estate fails to recognize that the determination of the gravamen of the complaint is a question of law. *Gunter v. Lab. Corp. of America*, 121 S.W.3d 636, 638 (Tenn. 2003). The Banegas affidavit merely contains the opinions of Banegas about the duties of a NMT. Banegas had no personal knowledge of what was done or not done by the NMTs in this case. Banegas was not there and cannot refute the testimony of Moore regarding his assessment of Decedent and the use of his training and experience in the positioning and securing of Decedent on the table. Further, Banegas does not state that all patients are always secured to the scan table in the same way, that there is absolutely no independent judgment involved, or even that the NMTs who dealt with Decedent did anything wrong. The opinions contained in the Banegas affidavit would not be determinative on this question of law.

As previously explained, the trial court has great discretion in ruling on Rule 59 motions, and its judgment will not be overturned absent a showing of abuse of discretion.

-10-

*Discover Bank v. Morgan,* 363 S.W.3d 479, 487 (Tenn. 2012). There has been no showing in this case that the trial court "applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that causes an injustice to the complaining party." *Id.* Under an abuse of discretion standard, the trial court's ruling will be upheld if "reasonable minds can disagree as to [the] propriety of the decision made." *Id.* The trial court did not abuse its discretion in denying plaintiff's Rule 59 motion. This issue is also without merit.

## V. CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Suzanne Renee Williams-Ali as Personal Representative of the Estate of Ruby Lee Cofer Williams.

_____
JOHN W. MCCLARTY, JUDGE