Dr. J. B. HASKINS *v.* TOM HOWARD.

and

Dr. J. B. HASKINS *v.* MAGGIE HOWARD.

(*Nashville.* December Term, 1928.)

Opinion filed April 15, 1929.

THOMPSON & BALLARD, for plaintiff in error.

WHITAKER & WHITAKER, for defendant in error.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

This is an action for damages against a surgeon for malpractice. There was a verdict for plaintiffs in the circuit court, upon which judgment was rendered. The Court of Appeals affirmed the judgment of the trial court, and the case is before us by the writ of *certiorari,* heretofore granted, on the petition of the defendant, Dr. Haskins. The parties will be herein referred to as plaintiffs and defendant, according to their *status* in the trial court.

It is assigned as error that there is no evidence to support the verdict.

The case is the result of an operation performed by Dr. Haskins upon Mrs. Maggie Howard, for the purpose of removing an ovarian tumor. After his patient had been subjected to ether, Dr. Haskins undertook to correct cervical lacerations by the application of a cauterizing instrument, and then made an abdominal incision. Examination then disclosed pregnancy of three or three and one-half months advancement, and the incision was closed. Plaintiff's evidence is that Dr. Haskins stated

that he had found pregnancy and that there was no tumor, but both Dr. Haskins and his assistant testified that they also found a small tumor which the pregnancy made it inadvisable to remove.

Mrs. Howard suffered a miscarriage on the fifteenth day after the operation. While there is evidence that such a result of the operation would have developed usually within three or four days, there is sufficient evidence to support the concurrent finding of the trial court and the Court of Appeals that the operation, and particularly the cauterizing of the cervix, was the cause of the miscarriage. Evidence of bleeding, which began before Mrs. Howard left the hopital and grew continuously worse until the date of the miscarriage, justified this inference, under the expert testimony in the record. There is no dispute that Mrs. Howard suffered a serious impairment of health as the result of the miscarriage, and there is no assignment of error that the amount of the verdict is excessive.

At the time of the operation Mrs. Howard was twenty-six years old, with several children. Her youngest child was seventeen months old. She testified that she told Dr. Haskins she was not sure she was not pregnant, and that her last menstruation was four months earlier. The hospital chart confirms this statement. She was examined at home and then, more thoroughly, at the hospital, and the operation was advised. Neither the patient nor her husband was given any intimation that Dr. Haskins was apprehensive that she was pregnant, and, according to the testimony of Tom Howard, the decision in favor of the operation was made on the statement of Dr. Haskins that he was "positive" that Mrs. Howard was suffering from a tumor.

Both Dr. Haskins and his assistant, Dr. Long, testified that they would not have operated on the woman if they had known she was pregnant, yet Dr. Haskins testified that he was "apprehensive" of pregnancy at the time he operated, and that he was "not one hundred per cent sure she was not pregnant." He further testified that Mrs. Howard was in no danger of death, and that he was induced to operate and not to delay because "the woman was suffering, seeking relief. She was in the hospital on expense, and they were very poor people."

There is abundant evidence in the record that an operation on a pregnant woman is likely to cause a miscarriage, and Dr. Long, Dr. Haskins' assistant, testified, "we do not operate on pregnant women unless it is absolutely necessary . . . for fear of miscarriage."

The case stated in the first count of each of the declarations is that Mrs. Howard submitted to the operation on the statement of Dr. Haskins that she was suffering from an ovarian tumor and that the operation was necessary, and thereupon the doctor "needlessly and carelessly" performed the operation, discovering pregnancy instead of a tumor. The declarations aver that the operation was unnecessary and was performed through mistake, due to unskillfulness, carelessness and negligence in improperly diagnosing the malady from which Mrs. Howard was suffering.

It was conceded on the trial that Dr. Haskins was a physician of skill and ability, and his qualifications as a surgeon were not questioned. Evidence was offered that physicians of requisite skill are often unable to definitely ascertain pregnancy under the conditions of this case, and that the defendant's failure to discover Mrs. Howard's condition prior to the operation was not negligence.

■ By the submission of hypothetical questions to other surgeons, testifying as experts, defendant sought to show that he was not negligent in advising and undertaking the operation. The value and weight of this evidence was, however, destroyed by the omission from the hypothesis submitted to the experts of the fact that the defendant himself entertained an apprehension that Mrs. Howard was pregnant at the time he operated. There is no expert testimony in the record that it is not negligence for a surgeon to operate for a suspected tumor while entertaining an apprehension of pregnancy, when a delay would confirm or disprove the diagnosis without endangering the life of the patient. The value of the opinion of an expert witness upon a supposed state of facts must depend upon the agreement or nonagreement of the supposed case with the actual facts of the case on trial. *Woodward* v. *Insurance Co.*, 104 Tenn., 49, 54; *Fisher* v. *Insurance Co.*, 124 Tenn., 450, 506-508.

■ The Court of Appeals was of opinion that the defendant was negligent in advising and undertaking the operation in view of the symptoms of pregnancy present, when he himself entertained a doubt or apprehension of pregnancy; that in view of this doubt and the admitted fact that a delay would not have endangered the life of his patient, it was the defendant's duty to delay the operation until he could make a more certain diagnosis.

We agree with the learned Court of Appeals that the testimony of Dr. Haskins himself was a sufficient predicate for the inference of negligence made by the jury. Such an inference is not dependent upon testimony of experts, and the issue was addressed to the intelligence and discretion of the members of the jury.

We do not have for decision whether Dr. Haskins could have conclusively protected himself from the imputation of negligence by laying before Mrs. Howard or her husband the facts within his knowledge, including his apprehension of pregnancy and the consequent hazard of the proposed operation, and leaving to them the decision whether to proceed or delay until the diagnosis could be made certain. The defendant does not claim to have communicated to either of the plaintiffs the fact of the uncertainty of his diagnosis, and Mr. Howard testified that defendant said to him: "I am satisfied that your wife is not pregnant; she has a tumor in her, and the quicker you can get it out the better she will be. . . . He said to get it out, that she had a weak heart and the quicker he would get it out she would get well." In these circumstances the jury were justified in holding defendant wholly responsible for the operation and in finding him negligent in acting upon a too hasty and therefore incomplete and improper diagnosis. In reaching this conclusion we emphasize the fact that the defendant did not consider the operation necessary to save the patient's life, so that there was no emergency, and the consent of the patient or her husband to the operation was not obtained after a full disclosure of the doubt entertained by the defendant of the correctness of the diagnosis, and the hazard to be incurred.

The verdict is supported by the evidence under the count of the declaration above set out, and we, therefore, find it unnecessary to consider the evidence under the second count, charging defendant with neglect after Mrs. Howard was discharged from the hospital.

The third assignment of error is that the trial judge erred in not permitting Dr. Long, defendant's assistant,

to testify that, in his opinion, the defendant exercised the ability and skill of other surgeons in the same locality in his diagnosis and treatment of Mrs. Howard.

█ In view of Dr. Long's testimony that he did not practice surgery except in the doing of "minor operations," it may well be doubted whether he had qualified as an expert so as to make his opinion competent. *Watson* v. *State,* 133 Tenn., 211. However, Dr. Long was permitted to testify before the jury: "I think the operation, in view of the symptoms she presented, was thoroughly justified and I think the operation was entirely all right in every way." This testimony went to the very heart of the issue, and the excluded testimony would have been only cumulative, so that no prejudice could have resulted from its exclusion.

The fourth assignment of error is that the trial judge erred in excluding testimony of Dr. Holtzclaw that, in his opinion, defendant was thoroughly justified in recommending and deciding upon the operation under the circumstances outlined in the question.

This testimony would have been immaterial, and its exclusion was, therefore, not prejudicial, because the opinion of the witness was not based upon the hypothesis that defendant himself entertained doubt as to the correctness of his diagnosis; which, as above stated, was one of the determinative facts of the proof.

Moreover, the record fails to show that this testimony was excluded from the jury, and Dr. Holtzclaw was elsewhere permitted to testify on the same faulty hypothesis submitted to him: "I should say yes, without controversy, by all means yes, any doctor would be justified to do an operation under those circumstances, under those circumstances without fault."

There is, therefore, no merit in these assignments of error.

The opinion of the Court of Appeals contains a sufficient response to assignments of error five-nine inclusive, and they will not be further considered here.

By the tenth and eleventh assignments of error defendant complains that the trial judge instructed the jury that the defendant was liable to the plaintiff if he failed to "exercise ordinary care and reasonable care, in making the diagnosis, to determine what was the trouble with this patient," and if he operated on her "after making a negligent and careless diagnosis, failing to exercise reasonable care to determine what was the matter with her," etc. It is contended that the jury should have been instructed in this connection that the test of negligence was whether defendant gave his patient that care and attention in his diagnosis, operation and treatment which a physician and surgeon of ordinary skill and ability practicing in the same locality would have given under the same circumstances.

Immediately preceding the instruction complained of, the trial judge had instructed the jury as follows:

"It is not questioned in this case, gentlemen, but what Dr. Haskins was a surgeon of skill and ability, that is conceded here in open court, in argument, that he possesses that degree of skill and ability that is ordinarily possessed by men engaged in the practice of medicine and surgery in this locality. That is the standard that the law requires and that is not disputed, that the Doctor was qualified in that respect.

"A surgeon is not liable, gentlemen, for damages to a patient resulting from an honest mistake in determining upon the necessity of an operation. He is not liable for

an honest mistake in making the diagnosis of the troubles and diseases of a patient. He is not liable for an error of judgment, as to what might be the trouble with the patient, or the matter with her, if he is honest in his efforts, and examination to find out what is the matter.

"He is not an insurer of his treatment, nor is he an insurer of the results. He is not liable for a mistake in the diagnosis or an error of judgment, but he is liable for negligence, that is, a want of reasonable and ordinary care."

In a subsequent paragraph of the charge the jury were told that it was the duty of the defendant to exercise reasonable care in attending his patient after the operation, and liability for negligence in that regard was expressly limited to a failure to "render such treatment and relief as an ordinarily prudent doctor engaged in the practice of medicine and surgery" in the same locality would have rendered.

Since the jury were instructed in the portion of the charge above quoted that the standard required of the defendant was that he possess the degree of skill and ability ordinarily possessed by men engaged in the practice of medicine and surgery in the same locality, the jury could not have failed to understand that defendant's performance of his duty to Mrs. Howard was to be measured and tested by the same standard.

The effect of the quoted instruction was to withdraw from the jury any error in the conclusions made by Dr. Haskins from the symptoms and indicia under his observation, as the premise of an inference of negligence, and to confine the jury to a consideration of whether the defendant exercised ordinary and reasonable care in making the diagnosis, on the faith of which he performed the

operation. This was in accord with the rule stated in *Burnett* v. *Layman,* 133 Tenn., 323, 328: *"Presuming a careful diagnosis* (italics here), a physician is not liable for damages resulting from an honest mistake in determining upon the character of treatment to be administered or in determining upon the necessity of an operation."

The lack of care in making the diagnosis developed by the evidence did not lie in the means or manner of the examination of the patient or in the failure to follow some prescribed course, as the use of the Roentgen ray, but in the failure to eliminate or confirm the admitted apprehension of error through postponement of action, which concededly would not have endangered the patient.

■ There is no evidence in the record as to what other physicians, entertaining an apprehension of error, would have done in the circumstances proven, and we think the jury, as men of ordinary experience and affairs, were qualified to draw their own inferences, and to reach their own conclusion as to what course other physicians of requisite skill and ability would have taken, without the aid of the testimony of experts. So, in view of the nature of the issue of fact submitted to the jury, the rights of the defendant were sufficiently protected by the instruction that failure to exercise ordinary and reasonable care in making the diagnosis would amount to negligence.

■ By the thirteenth assignment of error defendant complains that the jury were instructed that they were not bound to accept the testimony of the expert witnesses, but should give it such weight and credit as the jury thought it entitled to, weighing it as they would the testimony of other witnesses. The jury had already been

given the usual instructions to weigh the testimony of witnesses according to their intelligence and opportunity and means of knowing the facts about which they testified. It is contended that the effect of this instruction was that the jury, if they deemed it proper to do so, might disregard the testimony of physicians who testified as experts, on the question of what is proper practice in diagnosis, operation and treatment; and that the jury should have been instructed that they were bound by the testimony of experts on such questions.

The instruction complained of was in substantial accord with that heretofore approved by this court in cases in which expert testimony was involved. *Fisher* v. *Insurance Co.*, 124 Tenn., 450, 499-506; *Atkins* v. *State*, 119 Tenn., 458, 13 L. R. A. (N. S.), 1031; *Wilcox* v. *State*, 94 Tenn., 112.

It is, to say the least, doubtful whether any other instruction would not be prohibited by the provision of the constitution, article 6, section 9, that "judges shall not charge juries with respect to matters of fact," which was intended to preserve to the jury "the right to determine what facts are proved in a cause." *Ivey* v. *Hodges*, 23 Tenn. (4 Humph.), 154, 155.

And in 8 Encyclopædia of Pleading & Practice, p. 774, it is said: "The general rule of evidence, that the weight of the testimony, as distinguished from its competency or admissibility, is for the jury, applies equally to the testimony of expert witnesses, and consequently, in its instructions, it is a fundamental maxim that the court must jealously guard against trespassing in this respect upon the peculiar province of the jury." To the same effect is Corpus Juris, Evidence, section 823, vol. 22, p. 728.

We have given careful consideration to each .of the special requests for additional instructions to the jury, which form the basis of the remaining assignments of error, and do not find reversible error in the action of the trial judge in declining them. Some of them contain propositions in conflict with the rules stated in this opinion, and we think the instructions given to the jury sufficiently full and accurate to prevent any prejudice resulting to defendant from the refusal of any of the requests.

The judgment of the Court of Appeals is affirmed.