IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 5, 2002 Session

## LAURA C. TOTTY, ET AL. v. JOHN THOMPSON, M.D., ET AL.

**Appeal from the Circuit Court for Williamson County**
**No. I-2K177     R.E. Lee Davies, Judge**

---

**No. M2001-02539-COA-R3-CV - Filed January 9, 2003**

---

In this medical malpractice case, Plaintiff appeals summary judgment based upon the failure of Plaintiff's medical expert to establish the requisite familiarity with the standard of care in the community in which Defendant practices or in a similar community. We affirm the action of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, J., and ELLEN HOBBS LYLE, SP. J., joined.

E. Covington Johnston, Jr., Franklin, Tennessee, for the appellants, Laura C. and Alvin Mitchel Totty.

Michael A. Geracioti and Dale A. Tipps, Nashville, Tennessee, for the appellees, John Thompson, M.D., and Nolensville Family Care Center.

## OPINION

Plaintiffs, Alvin Mitchel Totty and Laura C. Totty, are husband and wife. On April 5, 1999, Laura Totty, complaining of pain above her left scapula, sought treatment for this condition by Defendant, Dr. John Thompson, at his office in Nolensville, Williamson County, Tennessee. While injecting steroid and pain medication into the area of pain the left upper back of Plaintiff, Defendant inadvertently pierced the lung of Plaintiff with a needle causing a pneumothorax (partially collapsed lung). Defendant informed Plaintiffs immediately of the inadvertent lung puncture and x-rayed the affected area to reveal the pneumothorax involving about ten percent of total lung volume. Ms. Totty was anxious about the puncture and Defendant admitted her directly to Williamson County Medical Center for observation and further x-rays. Hospital x-rays indicated a slight enlargement of the left pneumothorax and Defendant, along with Dr. Doug York, a general surgeon, and Dr.

Elliot Himmelfarb, an interventional radiologist, determined that Dr. Himmelfarb should perform a catheter re-expansion of the pneumothorax. Following the procedure, Ms. Totty was discharged from the hospital on April 7, 1999, and two days later, in a follow-up visit to the office of Dr. Thompson, it appeared that the pneumothorax had resolved. She was released to return to work on April 12, 1999 and never returned to the office of Dr. Thompson for follow-up treatment.

Suit was filed against Dr. Thompson and his employer, Nolensville Family Care Center, on April 4, 2000, alleging:

7. The Defendant, John Thompson, M.D., was negligent in the following way:
   a. He failed to properly monitor the Plaintiff's condition while inserting the trigger point needle into the patient's back.
   b. He failed to properly calculate the depth to which he could insert the trigger point needle into the Plaintiff's back.
   c. He carelessly inserted the trigger point needle into the patient's back to such a depth that he punctured the Plaintiff's lung.
   d. Even after the Defendant discovered that he had punctured the Plaintiff's lung, he injected the steroid and pain medication into the Plaintiff.
8. The Plaintiff believes that the Defendant, Nolensville Family Care Center, is the employer of the Defendant, John Thompson, M.D., and at all times material to this Complaint, believes that John Thompson was acting in the course and scope of his employment with the Defendant, Nolensville Family Care Center. The Plaintiff also believes that the Defendant, John Thompson, M.D., is the owner of the Defendant Nolensville Family Care Center, and the Defendant Nolensville Family Care Center is liable to the Plaintiff for the actions of its employee and/or owner, John Thompson, M.D.

Defendants answered on May 30, 2000, denying any acts of negligence. On February 6, 2001, Defendants filed a Motion for Summary Judgment accompanied by the Affidavit of Dr. Thompson asserting that he was familiar with the recognized standard for acceptable professional practice of family medicine in Williamson County and that his treatment of Mrs. Totty complied with such standard. He further asserted that the complication experienced by Mrs. Totty was an accepted and recognized risk of the particular procedure.

Plaintiffs countered with the Affidavit of Dr. Joseph Bussey, Jr. of Georgia asserting an opinion that the treatment by Dr. Thompson fell below the applicable standard of care in several respects. The trial court, however, never reached the merits of the Bussey affidavit, finding that the affidavit failed to establish familiarity with the standard of professional care in the community in which Dr. Thompson practices or in a similar community as is required by the "Locality Rule" mandated under Tennessee Code Annotated section 29-26-115(a)(1).

In this respect, the Affidavit of Dr. Bussey stated:

1. I am Joseph G. Bussey, Jr., and I am citizen and resident of the State of Georgia. I am over the age of 18 years.

2. I am a medical doctor. I limit my medical practice and speciality to general family practice and surgery. Despite my speciality, based upon my medical school of training, internship, and residency, I am familiar with general medical practice which constitutes common knowledge of all medical doctors. This common knowledge does not vary from state to state or from medical speciality to medical specialty.

3. I practice my speciality in the State of Georgia. I am licensed to practice medicine in the State of Georgia and was licensed to practice medicine continually for more than two years prior to April 5, 1999. I was licensed to practice medicine in the State of Georgia in my specialty in April, 1999, which is the time of the events complained of in this action. In April, 1999, as well as the date of the preparation of this Affidavit, the standard of care for family general practice in the State of Tennessee, including Nolensville, Tennessee, as it relates to the diagnosis and treatment of medical problems such as those experienced by Laura Totty in April 1999, was the same standard of care required by a physician in the State of Georgia. The standard of care under which a general diagnosis and treatment of the condition experienced by Laura Totty is identical in the State of Georgia as in the State of Tennessee. The diagnostic tests available to a physician in the State of Georgia and in the State of Tennessee to investigate the symptoms experienced by Laura Totty are identical. The standard of care under which a family general practitioner makes his or her decision as to the treatment performed on Laura Totty is identical in the State of Georgia as in the State of Tennessee. Therefore, I am familiar with the standard of care of a general family practitioner treating Laura Totty in April, 1999 in Nolensville, Tennessee. I am qualified to render the opinion set forth in my Affidavit.

The Affidavit does not meet the threshold requirements of Tennessee's Locality Rule. Tennessee Code Annotated section 29-26-115(a)(1) (Supp. 2000) requires the plaintiff to prove:

(1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;

The State of Georgia hardly qualifies as a "community" within the meaning of the statutory locality rule. Neither does the State of Tennessee.[1] No factual basis is asserted in the Affidavit of Dr. Bussey to establish his familiarity with the standard of care in Williamson County, Tennessee nor, if indeed it be the involved "community" within the meaning of the statute, does the Affidavit assert a factual basis relative to knowledge of the standard of practice in Nolensville, Tennessee. In a similar context this Court has held:

> He presented no other factual basis for his belief that he was familiar with the local standard of care, and there is no proof whatsoever in the record that would explain how the witness, a physician from Washington, D.C., would be familiar with the standard of care in Knoxville. It is clear the Trial Court has broad discretion in determining the qualifications for admissibility of testimony of expert witnesses. We find no abuse of that discretion in this case. *Mabon v. Jackson-Madison County General Hosp.*, 968 S.W.2d 826 (Tenn.Ct.App. 1997). *See also Osler v. Burnett*, 1993 WL 90381 (Tenn.Ct.App. March 30, 1993); *Bryant v. Bauguss*, 1996 WL 465539 (Tenn.Ct.App. August 16, 1996); *Swift v. Schoettle*, 1996 WL 730286 (Tenn.Ct.App. December 20, 1996); *Hopper v. Tabor*, 1998 WL 498211 (Tenn.Ct.App. August 19, 1998).

*Spangler v. East Tenn. Baptist Hosp.* No. E1999-01501-COA-R3-CV, 2000 WL 22543, at *2 (Tenn. Ct. App. Feb. 28, 2000).

Few areas of American Jurisprudence have been more challenging through the years than the development of the standard of care applicable in medical malpractice cases. Historically, Tennessee followed the "strict locality rule" until it was legislatively supplanted in 1975 by Tennessee's version of the "similar locality rule." *Sutphin v. Platt*, 720 S.W.2d 455 (Tenn. 1986); *Haskins v. Howard*, 16 S.W.2d 20 (Tenn. 1929); *Floyd v. Walls*, 1941 Tenn. App. Lexis 142 (Tenn. Ct. App. Dec. 13, 1941); 1975 Tenn. Pub. Acts 229, § 14 (codified as Tenn. Code Ann. § 29-26-115(a)(1)).

In *Shilkret v. Annapolis Emergency Hosital., Ass'n*, the Supreme Court of Maryland traced the history of these two locality rules in a manner worthy of notice.

> The earliest traces of the strict locality rule appeared a century ago. *Smothers v. Hanks*, 34 Iowa 286 (1872); *Tefft v. Wilcox*, 6 Kan. 46 (1870); *Hathorn v. Richmond*, 48 Vt. 557, 559 (1876) ("such skill as doctors in the same general neighborhood, in the same general lines of practice, ordinarily have and exercise in like cases"). It is an exclusive product of the United States; possibly because of the difference in the size of the two countries, the English courts have never developed such a principle. Waltz, *The Rise And Gradual Fall Of The Locality Rule In Medical Malpractice Litigation*, 18 DePaul L.Rev. 408 (1969). The rule was unquestionably

[1]Apparently an entire state may be a "community" within the meaning of the Connecticut locality rule. *See Fitzmaurice v. Flynn*, 356 A.2d 887 (Conn. 1975).

developed to protect the rural and small town practitioner, who was presumed to be less adequately informed and equipped than his big city brother. *Id.* The court reasoned with what was then unassailable logic in *Tefft v. Wilcox, supra*, 6 Kan. at 63-64:

> " . . . In the smaller towns and country, those who practice medicine and surgery, though often possessing a thorough theoretical knowledge of the highest elements of the profession do not enjoy so great opportunities of daily observation and practical operations, where the elementary studies are brought into every day use, as those have who reside in the metropolitan towns, and though just as well informed in the elements and literature of their profession, they should not be expected to exercise that high degree of skill and practical knowledge possessed by those having greater facilities for performing and witnessing operations, and who are, or may be constantly observing the various accidents and forms of disease. . . ."

In short, the rationale underlying the development of the strict locality rule a century ago was grounded in the manifest inequality existing in that day between physicians practicing in large urban centers and those practicing in remote rural areas.

. . . .

Whatever may have justified the strict locality rule fifty or a hundred years ago, it cannot be reconciled with the realities of medical practice today. "New techniques and discoveries are available to all doctors within a short period of time through medical journals, closed circuit television presentations, special radio networks for doctors, tape recorded digests of medical literature, and current correspondence courses." Note, *An Evaluation Of Changes In The Medical Standard Of Care*, 23 Vand.L.Rev. 729, 732 (1970). More importantly, the quality of medical school training itself has improved dramatically in the last century. Where early medical education consisted of a course of lectures over a period of six months, which was supplemented by apprenticeships with doctors who had even less formal education, there now exists a national accrediting system which has contributed to the standardization of medical schools throughout the country. *Id.* n. 16.

. . . .

We have noted that one of the earliest applications of the similar locality rule occurred in *Small v. Howard, supra*, 128 Mass. at 136, where, essentially for the same reasons that have traditionally undergirded the strict locality rule, the court enunciated as the standard: " 'that skill only which physicians and surgeons of ordinary ability and skill, practi[c]ing in similar localities, with opportunities for no

larger experience, ordinarily possess' "; thus the defendant " 'was not bound to possess that high degree of art and skill possessed by eminent surgeons practi[c]ing in large cities, and making a specialty of the practice of surgery.' "

. . . .

The similar locality rule answers some of the criticism aimed at the strict locality standard by enabling the plaintiff to obtain expert witnesses from different communities, thus reducing the likelihood of their acquaintance with the defendant. It does not, however, effectively alleviate the other potential problem, a low standard of care in some of the smaller communities, because the standard in similar communities is apt to be the same. Another criticism leveled at the similar locality rule is the difficulty which arises in defining a "similar" locality. For these reasons, the similar locality rule is regarded as no more than a slight improvement over the stricter standard.

*Shilkret v. Annapolis Emergency Hosp. Ass'n*, 349 A.2d 245, 248-250, (Md. 1975).

The locality rule in Maryland was of common law origin, and Maryland was, thus, free to follow the emerging trend in other jurisdictions to adopt what was essentially a national standard. In Tennessee, the 1975 Act liberalized what was then the "strict locality rule" by legislatively mandating a "similar locality rule."[2] Whatever may be the desirability - - or undesirability - - of following the trend in sister jurisdictions toward a national standard, this avenue in Tennessee is foreclosed to judicial action. The ink is barely dry on the decision of the Supreme Court of Tennessee in *Robinson v. Lecorps*, 83 S.W.3d 718 (Tenn. 2002), issued September 5, 2002, wherein the court addressed this very question. Said the court:

Despite the clear statutory language and evidence of legislative intent, Robinson asserts that the locality rule in Tenn.Code Ann. § 29-26-115(a)(1) should be enlarged or broadened by adopting a national standard of professional care for all malpractice actions, malpractice actions involving physicians who are board-certified in a particular area, or malpractice actions involving a specific treatment issue or area of medicine. There is no statutory language or other evidence of legislative intent, however, that would support such an interpretation.

The legislature, which is presumed to know of its enactments and the state of the law, has not amended or supplemented the statutory language in any way that would broaden the locality rule or support such a sweeping change in the standard of

---

[2]If the historic underpinnings of the locality rules are accurately analyzed in *Shilkret*, it would seem somewhat paradoxical that, in the treatment of a broken ankle the testimony of a Johnson City physician, presumably himself subject to a less restrictive standard of care cannot opine as to minimum standards for Nashville more stringent because of the size and sophistication of its medical facilities. *C/F Robinson v. Lecorps.*

care in malpractice actions. Moreover, in the absence of applicable statutory language, we decline to adopt the plaintiff's interpretation based either on policy arguments or alleged evidence of the existence of a national standard of care in the medical community that are better addressed to the legislature.

This Court is mindful, however, that in many instances the national standard would indeed be representative of the local standard, especially for board certified specialists. Although such issues are properly left to the discretion of the legislature, we encourage the General Assembly to reconsider the current statutory framework of the locality rule. However, until such legislative action, we believe that the legislative intent and purpose of Tenn.Code Ann. § 29-26-115(a)(1), as presently derived from the statutory language, continues to be that the conduct of doctors in this State is assessed in accordance with the standard of professional care in the community in which they practice or one similar to it.

*Robinson*, 83 S.W.3d at 723-24.

By order of May 11, 2001, the trial court, relying on *Cardwell v. Bechtol*, 724 S.W.2d 739 (Tenn. 1987), and *Mabon v. Jackson-Madison County General Hospital*, 968 S.W.2d 826 (Tenn. Ct. App. 1997), granted summary judgment to Defendants under the Tennessee Locality Rule.

On June 7, Plaintiffs filed a Motion to Alter or Amend accompanied by a Supplemental Affidavit of Dr. Bussey. This Motion to Alter or Amend was denied by the trial court by Order entered September 25, 2001.

The trial court did not abuse its discretion in refusing to alter or amend the grant of summary judgment. *Moore v. Walwyn*, No. 01A01-9507-CV-00295, 1996 WL 17143 (Tenn. Ct. App. Jan. 19, 1996). It is well to observe that, even if the trial court had considered the late filed Supplemental Affidavit of Dr. Bussey, it could not have altered the grant of summary judgment. The Supplemental Affidavit added nothing to the previous Affidavit except to assert "I am aware of the fact that Nolensville, Tennessee is a small town with no hospital located within its city limits. I am also aware that the closest hospital to Nolensville, Tennessee, is approximately ten or fifteen miles to the north in Nashville, Tennessee, and approximately ten or fifteen miles to the southwest in Franklin, Tennessee." This assertion in no way cures the deficiencies relating to Dr. Bussey's lack of familiarity with the applicable standard of care.

The trial court had no alternative but to grant summary judgment to Defendants in this case, and that action is in all respects affirmed.

The case is remanded to the trial court with costs assessed to Appellants.

_____
WILLIAM B. CAIN, JUDGE