**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0772n.06

No. 08-6537

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Dec 08, 2009**

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| PEGGY BROWN, et al., | ) | |
| | ) | |
| *Plaintiffs-Appellants,* | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE WESTERN DISTRICT OF |
| | ) | TENNESSEE |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Defendant-Appellee.* | ) | |

**Before: ROGERS and KENNEDY, Circuit Judges; and HOOD, Senior District Judge.**[*]

**HOOD, Senior District Judge.** This is an appeal from the decision of the United States District Court for the Western District of Tennessee, granting Defendant-Appellee's Motion for Summary Judgment. The district court dismissed Plaintiffs-Appellants' claim for malpractice after determining that Plaintiffs could not support their medical malpractice claim, brought under the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1), with adequate opinion testimony as to the standard of professional care in Memphis, Tennessee, or a community demonstrably similar to Memphis, Tennessee, as required by Tenn. Code Ann. § 29-26-115(a). Plaintiffs appeal the district court's

_____

[*] The Honorable Joseph M. Hood, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

decision, arguing that the locality rule of Tenn. Code Ann. § 29-26-115(a) should have been waived by the district court in this instance. In the alternative, Plaintiffs argue that the district court erred in granting Defendant's second Motion for Summary Judgment having earlier denied Defendant's first Motion for Summary Judgment, which also raised the issue of whether their opinion witness's testimony was adequate under the locality rule. For the reasons stated below, the Court **AFFIRMS** the decision of the district court.

## I.      Factual and Procedural Background

James S. Carmon underwent surgery on November 5, 2002, which was intended to improve the poor circulation in his legs resulting from peripheral vascular disease. Plaintiffs allege that, as a result of malpractice during that surgery, Carmon suffered paralysis of his right leg and paresis in his left leg and that a surgical catheter balloon was left in Carmon's body, and that these conditions eventually led to his death. The surgery took place at the Veterans Administration Medical Center in Memphis, Tennessee.

### A.      Defendant's First Motion for Summary Judgment Is Denied

As discovery progressed in the district court, Dr. Donald Patrick was designated by Plaintiffs as an opinion witness under Fed. R. Civ. P. 26. On June 11, 2007, Plaintiffs' counsel received a letter from Dr. Patrick stating only that, in his opinion, Carmon's operation was conducted "in such a manner that the . . . complications occurred is a breach of the acceptable standard of care."

The United States filed a first Motion for Summary Judgment on July 13, 2007, arguing in part that Dr. Patrick had failed to demonstrate his familiarity with the standard of care in Memphis, Tennessee, as required under Tennessee law. Plaintiffs then produced an affidavit from Dr. Patrick

2

which stated, in relevant part, "I am familiar with the recognized standard of professional practice in the community where the injury to Mr. Carmon occurred. The standards of practice for these types of procedures are not local in nature, but national in nature due to the specialization required for this area of medical practice..."

On September 21, 2007, the district court denied the first Motion for Summary Judgment on the grounds that it was premature to strike Dr. Patrick's report and grant summary judgment, even if Dr. Patrick's letter report and affidavit were inadequate at that time, as Plaintiffs had indicated that Dr. Patrick would submit a more detailed report after receiving additional discovery from Defendant and following the deposition of Carmon's attending physician.

## B.    Discovery Continues

Following the denial of the Defendant's first Motion for Summary Judgment, Plaintiffs produced a document captioned "Rule 26(a)(1)(A) and (B) Report of Expert Witness," in which Dr. Patrick affied that he was "familiar with the standard of care for physicians practicing medicine in the [*sic*] Memphis, Tennessee." During the evidentiary deposition of Dr. Patrick on March 5, 2008, the following exchange occurred:

> Q.    It's my understanding, Doctor, that your practice has primarily been in Arkansas since 1973, except for one year in Texas?
>
> A.    That's correct.
>
> Q.    And we're just a couple hours from Memphis, where we are right here in Searcy, and then Fort Smith –
>
> A.    It takes us two hours to get there.

3

Q.   Is it fair to say that you're familiar with the standard of care of thoracic surgeons in the Memphis, area, Doctor?

A.   Yes, to the extent that there should be no difference in the way medicine's practiced in Memphis, or frankly anywhere else in the United States.

On cross-examination, Dr. Patrick testified as follows:

Q.   Is it your testimony that you are relying in your opinions on a national standard?

A.   Yes.

On redirect, Dr. Patrick testified as follows:

Q.   Is it fair to say that you're familiar with the standards of care in Memphis?

A.   As much as I am in any other city where I haven't practiced.

Q.   Okay.

A.   In the sense that – if you're asking because I've done something in Memphis before, that there's something about Tennessee law that you have to be in a adjacent state or something.  But the bottom line is, it makes no difference whether you're in New York City or Memphis or Timbuktu; the standards are the same.

Q.   Is that because this is a vascular surgery speciality and that the standards are the same nationally for specialities such as this?

A.   For all specialities, it's the same.

**C.   Defendant's Second Motion for Summary Judgment is Granted**

During a March 20, 2008, status conference, the district court granted Defendant leave to file a second Motion to Dismiss or for Summary Judgment, which was then filed on April 21, 2008. Plaintiffs' Response did not raise the issue of whether the locality rule of Tenn. Code Ann. § 29-26-115(a) could or should be waived by the district court, nor did it raise the issue of whether it was proper for the district court to decide the second Motion for Summary Judgment having previously denied Defendant's first Motion for Summary Judgment, both of which raised arguments concerning the application of Tenn. Code Ann. § 29-26-115(a)'s locality rule. The district court granted Defendant's Motion for Summary Judgment on October 15, 2008.

## II.     Standard of Review

This Court reviews the district court's grant of summary judgment de novo. *Mazur v. Young,* 507 F.3d 1013, 1016 (6th Cir. 2007). "Summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c)). "Because we review the grant of summary judgment *de novo,* we may affirm the judgment on grounds other than those employed by the lower court, as long as the party opposing summary judgment is not denied the opportunity to respond." *Thornton v. Fed. Express Corp.,* 530 F.3d 451, 456 n. 2 (6th Cir. 2008); *see also Nance v. Goodyear Tire & Rubber Co.,* 527 F.3d 539, 553 (6th Cir. 2008).

## III.    Analysis

### A.     Plaintiffs' Arguments Are Waived on Appeal

On appeal, Plaintiffs argue that application of the locality rule stated in Tenn. Code Ann. § 29-26-115(a) may and should have been waived by the district court in this instance, citing *Childress v. Bennett*, 816 S.W.2d 314 (Tenn. 1991). Plaintiffs next argue that the district erred in granting Defendant's second Motion for Summary Judgment, having already denied Defendant's first Motion for Summary Judgment, when both Motions addressed the issue of whether application of the locality rule would bar Dr. Perkins' testimony. Neither of these arguments were raised before the district court and are waived on appeal to this Court. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008) ("[A]n argument not raised before the district court is waived on appeal to this Court.").

**B.      Plaintiffs' Arguments on Appeal Are Without Merit**

Even if we were to determine that Plaintiffs' arguments were not waived, we conclude that they are without merit. Plaintiffs' claim for malpractice under the Federal Tort Claims Act was properly dismissed as there was no issue as to any material fact and Defendant was entitled to judgment as a matter of law. Fed .R. Civ. P. 56(c). Specifically, Plaintiffs' designated opinion witness failed to demonstrate knowledge of the applicable standard of care in Memphis, Tennessee, the community in which the doctors who allegedly caused decedent's injuries practice, as required in a medical malpractice case by Tenn. Code Ann. § 29-26-115(a). Plaintiffs have not identified any instance in which the "locality rule" of Tenn. Code Ann. § 29-26-115(a) may be waived by a court, nor was it error for the district court to grant Defendant's Motion for Summary Judgment on this ground, even though it declined to do so upon Defendant's earlier Motion for Summary Judgment. Without competent opinion testimony concerning that standard of care, Plaintiffs cannot meet their

burden of establishing the local standard of care as required by Tennessee statute, and summary judgment was appropriate.

### 1. Tennessee's Locality Rule under Tenn. Code Ann. § 29-26-115(a)(1) May Not Be Waived

The Federal Tort Claims Act, pursuant to which Plaintiffs' bring their claim, provides that the United States may be liable for medical malpractice "if a private person would be liable to the plaintiff in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Tennessee law provides that measure in the instant matter.

To obtain relief upon a claim of medical malpractice in Tennessee, a plaintiff must present competent opinion evidence establishing each of the three elements set forth in Tenn. Code Ann.§ 29-26-115(a): the applicable standard of care, the defendant's violation of that standard, and a causal connection between the defendant's conduct and the plaintiff's injury. *Seavers v. Methodist Med. Ctr. of Oak Ridge*, 9 S.W.3d 86, 93 (Tenn. 1999); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Blocker v. Regional Med. Ctr. at Memphis*, 722 S.W.2d 660, 661 (Tenn. 1987); *Hessmer v. Miranda*, 138 S.W.3d 241, 244 (Tenn. Ct. App. 2003). Tenn. Code Ann. § 29-26-115(a) also imposes a "locality rule" in medical malpractice cases, which serves as a measure of the competency of the proposed physician witness. *See* Fed. R. Evid. 601 ("in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the competency of a witness shall be determined in accordance with State law."). Thus, a plaintiff bears the burden of demonstrating "[t]he recognized standard of acceptable professional practice in the profession and the speciality thereof, if any, that the defendant practices in the community in which

7

the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred." Tenn. Code Ann. § 29-26-115(a)(1).

"For the purpose of Tenn. Code Ann. § 29-26-115(a), the only relevant 'community' is the community in the which the defendant physician actually practices or in a similar community." *Kenyon v. Handal,* 122 S.W.3d 743, 762 (Tenn. Ct. App. 2003). The plaintiff must demonstrate that an opinion witness has knowledge of the standard of care applicable in the defendant's community or in a community that the party demonstrates to be similar to that where the defendant practices medicine. *Robinson v. Le Corps*, 83 S.W.3d 718, 724 (Tenn. 2002). If a plaintiff's opinion witness cannot demonstrate adequate knowledge concerning the medical resources and standards of care in the community in which the defendant practices, the plaintiff's claim must fail. *Mabon v. Jackson-Madison County Gen. Hosp.*, 968 S.W.2d 826, 831 (Tenn. Ct. App. 1997); *Cardwell v. Bechtol*, 724 S.W.2d 739, 754 (Tenn. 1987).

An opinion witness may not base his or her testimony solely on his or her familiarity with a national, regional, or statewide standard of professional practice. *Johnson v. Pratt*, No. W2003-02110-COA-R3-CV, 2005 WL 1353636, at *7 (Tenn. Ct. App. June 9, 2005) (no perm. app. filed); *Kenyon,* 122 S.W.3d at 762; *Totty v. Thompson,* 121 S.W.3d 676, 678-79 (Tenn. Ct. App. 2003); *Howell v. Baptist Hosp.,* No. M2001-02388-COA-R3-CV, 2003 WL 112762, at *8 (Tenn. Ct. App. Jan. 14, 2003). While an opinion witness's discussion of a broader standard of care does not require exclusion of the testimony, it may not substitute for evidence that establishes the locality requirements of Tenn. Code Ann.§ 29-26-115(a)(1). *See Stovall v. Clarke*, 113 S.W.3d 715, 722 (Tenn. 2003); *Robinson*, 83 S.W.3d at 724; *Taylor v. Jackson-Madison County Gen. Hosp. Dist.*,

231 S.W.3d 361, 366 (Tenn. Ct. App. 2006). Nor is it sufficient for an opinion witness to merely assert familiarity with the local standard of care to demonstrate knowledge under the statutory standard. *Allen v. Methodist Healthcare Memphis Hosp.*, 237 S.W.3d 293, 295-96 (Tenn. Ct. App. 2007) (locality rule not satisfied where doctor from Nashville offered testimony as to standard of care in Memphis without showing of similarity in communities or other basis for knowledge); *Eckler v. Allen*, 231 S.W.3d 379, 385-87 (Tenn. Ct. App. 2006); *Mabon*, 968 S.W.2d at 831. Rather, the opinion witness must indicate the basis for his or her familiarity with the local standard of care. *Robinson*, 83 S.W.3d at 724; *Williams v. Baptist Mem'l Hosp.*, 193 S.W.3d 545, 553-54 (Tenn. 2006). This must be firsthand knowledge "gained 'in person without the intervention of another.'" *Allen*, 237 S.W.3d at 295-96 (quoting *Eckler*, 231 S.W.3d at 386).

Statutory and precedential framework aside, we find that Plaintiffs' case is nearly indistinguishable from *Robinson*. In *Robinson*, the plaintiffs attempted to establish the standard of professional care in Nashville–the relevant community–by proffering a doctor who was licensed in Tennessee but practiced in Johnson City, Tennessee. *Robinson*, 83 S.W.3d at 724. The doctor testified only that the applicable standard of care in Nashville "would be expected" to be the same as the national standard of care with which he was familiar. *Id.* The doctor also testified that orthopaedic surgeons–which was the defendant's speciality–"would stand the same test and would be expected to have the same knowledge and to practice in very similar fashions by the American Board of Orthopaedic Surgeons." *Id.* at 724-25. The doctor, however, did not make any attempt to relate the basis for his knowledge of the standard of care in Nashville or explain why the Nashville medical community was similar to the community where the doctor himself practiced. *Id.* at 725.

Based on this evidence, the Tennessee Supreme Court ruled that the testimony was not sufficient to establish the standard of care in the relevant community under the locality rule and was thus appropriately denied admission at trial. *Id.*

Likewise in the instant case, Plaintiffs offered no evidence that Dr. Patrick has any personal knowledge of the relevant standard of medical care in Memphis or in a community demonstrably similar to Memphis. In his affidavits, dated August 10, 2007, and February 14, 2008, Dr. Patrick stated that he was "familiar with the recognized standard of professional practice in the community where the injury to [Decedent] occurred," but qualified his assertion by stating that "the standards of practice for these types of procedures are not local in nature, but national in nature due to the specialization required for this area of medical practice." In his deposition, Dr. Patrick testified that he was familiar with the standard of care for thoracic surgeons in the Memphis area "to the extent that there should be no difference in the way medicine's practiced in Memphis, or frankly anywhere in the United States." Furthermore, although Dr. Patrick testified that he practiced in Searcy, Arkansas, "just a couple of hours from Memphis," neither Dr. Patrick nor any other witness offered evidence that Searcy, Arkansas, or any other community with which Dr. Patrick was familiar is similar to Memphis, Tennessee. Accordingly, we find *Robinson* controlling and similarly rule that, notwithstanding the fact that Dr. Patrick practiced in other communities and was familiar with the national standard of care, the evidence provided by Plaintiffs is simply not enough to meet the locality requirement of Tenn. Code Ann. § 29-26-115(a).[1]

---

[1] The Tennessee Supreme Court also noted its discontent with the locality rule as a whole and suggested to the General Assembly that it be changed to account for the fact that national norms,

Nor may courts waive the locality rule, as Plaintiffs argue, citing *Childress v. Benneett*, 915 S.W.2d 314 (Tenn. 1991). *Childress* did not address the locality rule stated in Tenn. Code Ann. § 29-26-115(a). Rather, the *Childress* court was concerned with a second part of the locality rule, found in Tenn. Code Ann. § 29-26-115(b), which requires that an opinion witness in a malpractice case be licensed to practice in Tennessee or a contiguous bordering state in the year preceding the date of the alleged injury or wrongful act. *Childress*, 816 S.W.2d at 316. As recognized in *Childress*, Tenn. Code Ann. § 29-26-115(b) explicitly provides that its requirements may be waived by the trial court. *Id*. Tenn. Code Ann. § 29-26-115(a) includes no such provision for waiver, and Tenn. Code Ann. § 29-26-115(b)'s waiver provision is not applicable to subsection (a). Thus, the district court could not have waived the locality rule of Tenn. Code Ann. § 29-26-115(a).

2.      **District Court Has Inherent Power to Reconsider Interlocutory Orders Before Entry of Final Judgment**

Finally, there is no merit to Plaintiff's argument that the trial court erred in granting Defendant's second Motion for Summary Judgment, having earlier denied Defendant's first Motion for Summary Judgment. The district court had the power to act because no final judgment had been entered in the case, and "[d]istrict courts have inherent power to reconsider interlocutory orders and

---

especially with respect to specialized procedures such as the one in question here, are often representative of the local norms. *Robinson v. Le Corps*, 83 S.W.3d 718, 724 (Tenn. 2002). We agree with the Tennessee Supreme Court and also encourage the General Assembly to address this issue. However, we are not only bound, as was the Tennessee Supreme Court, by the existing statute but are also bound by the Tennessee Supreme Court's interpretation of the locality rule provided in *Robinson*.

reopen any part of a case before entry of a final judgment." *In re Saffady*, 524 F.3d 799, 802-803

(6th Cir. 2008) (quoting *Mallory v. Eyrich,* 922 F.2d 1273, 1282 (6th Cir. 1991)).

## VI.    CONCLUSION

For all of the reasons stated above, the decision of the district court is **AFFIRMED**.

No. 08-6537
*Brown v. United States*

**Rogers, J., concurring.**  The majority opinion demonstrates the ineluctable conclusion required in this case.  I write separately, however, to express my discomfort with our holding.  A strict locality rule in medical malpractice cases precluded expert testimony regarding the standard of care in a locality other than the one in which the alleged malpractice occurred.  *E.g.*, *Haskins v. Howard*, 16 S.W.2d 20, 22-23 (Tenn. 1929) ("liability for negligence in that regard was expressly limited to a failure to 'render such treatment and relief as an ordinarily prudent doctor engaged in the practice of medicine and surgery' in the same locality would have rendered").  The purpose of the strict locality rule was to relieve rural or small town doctors of the necessity of practicing up to a big city standard when that was not reasonably required.  *Shilkret v. Annapolis Emergency Hosp. Assoc.*, 349 A.2d 245, 248 (Md. 1975).  The perceived downside of the rule was that it made it hard for plaintiffs to recover when they had to get a doctor-witness from the same community as the doctor-defendant.  *Id.* at 249.  Statutory reforms in many states, such as Tennessee, permitted doctors to testify to the standard of a doctor from the same "or a similar" community.  *See* Tenn. Code. Ann. § 29-26-115(a)(1); *Totty v. Thompson*, 121 S.W.3d 676, 679 (Tenn. Ct. App. 2003) ("the 1975 Act liberalized what was then the 'strict locality rule' by legislatively mandating a 'similar locality rule'").  A prominent casebook explains that a "similar community rule" is "designed to balance the need to avoid evaluating a general practitioner in a rural area by the same standards as a specialist in an urban teaching hospital with the need of the plaintiff for access to expert testimony."  Victor Schwartz, et al., Prosser, Wade, & Schwartz's Torts: Cases and Materials  182 (10th ed. 2000).

13

The Tennessee Supreme Court has gone beyond the literal language of the statute in requiring that an expert doctor be familiar with the standard of care in the locality where the alleged malpractice occurred. The Tennessee statutory "similar community" provision deals with the standard to be applied and not with the qualification of expert witnesses. (The subsequent subsection (b), which does explicitly require some qualifications for medical experts, was complied with in this case.) Under Tennessee common law, however, the witness must apparently be familiar with the community in which the alleged malpractice occurred, and it is apparently not sufficient for the doctor-witness to be familiar with the standard of care in a locality that the *court* may determine to be similar in terms of size, wealth, presence of a medical school, etc. Such a strict qualification standard effectively guts the reform aspect of the "similar community" language of the Tennessee statute.

The only conceivable purpose of the strict witness qualification rule, other than simply reducing medical malpractice suits generally, would be to reduce some perceived problem of juries' being misled by high-powered professional witnesses from out of state. But such a problem is simply not present in the Federal Tort Claims Act context, where there is no jury.

There is thus no good reason for the strict witness-qualification aspect of the Tennessee locality rule to be carried over to the Federal Tort Claims Act context. Doing so frustrates the dual purposes of the Federal Tort Claims Act, which were "to relieve Congress of the overwhelming pressures and burdens of private relief bills, and . . . to do justice to those who had suffered injuries or losses through the wrongs of government employees." 1-3 Lester Jayson & Robert Longstreth, HANDLING FEDERAL TORT CLAIMS § 3.01 (2007). As the majority notes, however, Fed. R. Evid. 601

requires the application of state evidentiary rules regarding the qualification of expert witnesses.

Affirmance appears therefore to be required in this case.