ROGERS, J.,
concurring.
The majority opinion demonstrates the ineluctable conclusion required in this case. I write separately, however, to express my discomfort with our holding. A strict locality rule in medical malpractice eases precluded expert testimony regard *908 ing the standard of care in a locality other than the one in which the alleged malpractice occurred. E.g., Haskins v. Howard, 159 Tenn. 86, 16 S.W.2d 20, 22-23 (1929) (“liability for negligence in that regard was expressly limited to a failure to ‘render such treatment and relief as an ordinarily prudent doctor engaged in the practice of medicine and surgery’ in the same locality would have rendered”). The purpose of the strict locality rule was to relieve rural or small town doctors of the necessity of practicing up to a big city standard when that was not reasonably required. Shilkret v. Annapolis Emergency Hasp. Assoc., 276 Md. 187, 349 A.2d 245, 248 (1975). The perceived downside of the rule was that it made it hard for plaintiffs to recover when they had to get a doctor-witness from the same community as the doctor-defendant. Id. at 249. Statutory reforms in many states, such as Tennessee, permitted doctors to testify to the standard of a doctor from the same “or a similar” community. See Tenn.Code. Ann. § 29-26-115(a)(1); Totty v. Thompson, 121 S.W.3d 676, 679 (Tenn.Ct.App.2003) (“the 1975 Act liberalized what was then the ‘strict locality rule’ by legislatively mandating a ‘similar locality rule’ ”). A prominent casebook explains that a “similar community rule” is “designed to balance the need to avoid evaluating a general practitioner in a rural area by the same standards as a specialist in an urban teaching hospital with the need of the plaintiff for access to expert testimony.” Victor Schwartz, et al., Prosser, Wade, & Schwartz’s Torts: Cases and Materials 182 (10th ed.2000).
The Tennessee Supreme Court has gone beyond the literal language of the statute in requiring that an expert doctor be familiar with the standard of care in the locality where the alleged malpractice occurred. The Tennessee statutory “similar community” provision deals with the standard to be applied and not with the qualification of expert witnesses. (The subsequent subsection (b), which does explicitly require some qualifications for medical experts, was complied with in this case.) Under Tennessee common law, however, the witness must apparently be familiar with the community in which the alleged malpractice occurred, and it is apparently not sufficient for the doctor-witness to be familiar with the standard of care in a locality that the court may determine to be similar in terms of size, wealth, presence of a medical school, etc. Such a strict qualification standard effectively guts the reform aspect of the “similar community” language of the Tennessee statute.
The only conceivable purpose of the strict witness qualification rule, other than simply reducing medical malpractice suits generally, would be to reduce some perceived problem of juries’ being misled by high-powered professional witnesses from out of state. But such a problem is simply not present in the Federal Tort Claims Act context, where there is no jury.
There is thus no good reason for the strict witness-qualification aspect of the Tennessee locality rule to be carried over to the Federal Tort Claims Act context. Doing so frustrates the dual purposes of the Federal Tort Claims Act, which were “to relieve Congress of the overwhelming pressures and burdens of private relief bills, and ... to do justice to those who had suffered injuries or losses through the wrongs of government employees.” 1-3 Lester Jayson & Robert Longstreth, Handling Federal Tort Claims § 3.01 (2007). As the majority notes, however, Fed. R.Evid. 601 requires the application of state evidentiary rules regarding the qualification of expert witnesses. Affirmance appears therefore to be required in this case.