IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 18, 2005 Session

## BARBARA JOHNSON, ET AL. v. EDWARD PRATT, M.D.

**A Direct Appeal from the Circuit Court for Shelby County**
**No. CT-001026-02     The Honorable James F. Russell, Judge**

---

**No. W2003-02110-COA-R3-CV - Filed June 9, 2005**

---

Plaintiff/Patient filed a complaint against Defendant/Doctor alleging medical malpractice for failure to obtain her informed consent before operating. The trial court granted summary judgment to Defendant/Doctor on the basis that Plaintiff/Patient had failed to meet the burden of proof required by T.C.A. §29-26-115 and T.C.A. §29-26-118. Plaintiff appeals. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J.and JOHN EVERETT WILLIAMS, J. and. joined.

Linda Kendall Garner of Memphis for Appellants, Barbara and Paul Johnson

J. Kimbrough Johnson and Elizabeth Collins of Memphis for Appellees, Edward Pratt, M.D. and Spine Memphis, a division of The Orthopaedic Clinic

**OPINION**

In early 2000, Barbara Johnson (together with her husband Paul Johnson, the "Johnsons," "Plaintiffs," or "Appellants") sought medical treatment at Spine Memphis, a division of The Orthopedic Clinic ("Spine Memphis") for chronic back pain and hip stiffness following an injury. At Spine Memphis, Ms. Johnson was seen by Dr. Edward Pratt (together with Spine Memphis, "Defendants," or "Appellees"). Dr. Pratt diagnosed lumbar spinal stenosis and recommended surgery to stabilize Ms. Johnson's lower spine. On June 26, 2000, Dr. Pratt performed surgery on Ms. Johnson in which he implanted pedicle screws on each side of two contiguous vertebrae in order to fuse them. Following the surgery, Ms. Johnson experienced renewed stiffness. On or about January 16, 2001, Ms. Johnson visited Dr. Roger Weiner, a cardiologist. Dr. Weiner ordered an EKG, which yielded "abnormal" results. Based upon these results, Ms. Johnson returned to Dr. Pratt for diagnosis and treatment on February 25, 2001. Dr. Pratt ordered x-rays, which revealed that one of the four implanted pedicle screws had shifted and that the screw was pressing against an

abdominal artery. Dr. Pratt concluded that surgery was necessary to remove the errant screw and he performed that second surgery on March 12, 2001.

On February 25, 2002, the Johnsons filed a Complaint against Spine Memphis and Dr. Pratt alleging medical negligence. Specifically, the Complaint asserts that Dr. Pratt used seventeen pedicle screws rather than the "two screws explained by the defendant and consented to by the plaintiff," and that there was a lack of informed consent. On April 22, 2002, Spine Memphis and Dr. Pratt filed a joint Answer, in which they denied the material allegations of the Complaint. On May 21, 2002, the Johnsons filed "Plaintiffs' Answers to Defendants First Set of Interrogatories and First Request for Production of Documents." In response to Interrogatory No. 9, which asked the Johnsons to identify the names of any experts they expected to call, the Johnsons stated that "plaintiff has not yet determined whom she will call to testify at the trial of this matter. Once this determination is made, this interrogatory will be supplemented in accordance with the Tennessee Rules of Civil Procedure."

On May 28, 2002, Spine Memphis and Dr. Pratt filed a joint "Motion for Summary Judgment" along with a Memorandum of Law and the Affidavit of Dr. Pratt in support thereof. The Affidavit of Dr. Pratt reads, in pertinent part, as follows:

> Comes now, Edward Pratt, M.D., who after having be[en] duly sworn, states under oath as follows:
>
> 1. I, Edward Pratt, am a medical doctor and practice my specialty of orthopedic surgery in Memphis, Tennessee. I am licensed to practice medicine in Tennessee and was so licensed in 2000 and at least one year prior thereto. I am familiar with the recognized standard of professional practice required of physicians practicing in my specialty in this community.
>
> 2. On June 26, 2000, I operated on Barbara Johnson for instability of L4-5 with spinal stenosis. The operative procedure was decompression with laminectomy and fusion using bone graft and pedicle screws. This surgical procedure was indicated and was performed in a recognized manner in accordance with a recognized standard of care for orthopedic surgeons performing this procedure in this community.
>
> 3. Post-operatively, I continued to follow Barbara Johnson, and by the spring of 2001, it was apparent that the pedicle screws had given way and should be removed. The fact that the pedicle screws gave way is not an indication that the original operative procedure was done improperly, but rather because this is a recognized complication. On April 12, 2001, I removed the screws.

4. Prior to the original surgery in June of 2000, I discussed the medical diagnosis, operative indications, risks, and possible complications which are customarily discussed by orthopedic surgeons in complying with a recognized standard of care.

5. In all of the medical care and treatment I rendered to Barbara Johnson, I complied with a recognized standard of professional practice for physicians practicing in my specialty in this community, and nothing I did caused Barbara Johnson to sustain injuries and damages which would not otherwise have occurred.

On July 17, 2002, Spine Memphis and Dr. Pratt filed "Defendants' Responses to Plaintiffs' First Request for Production of Documents,"which reads, in relevant part, as follows:

**INTERROGATORY NO. 13:** Please state the information that was given to Barbara Johnson on the indications for use, benefit versus risks, of the pedicle screws.

**ANSWER**: Pedicle screws are used to facilitate fusion between vertebrae. A model was shown to the patient and a picture drawn which demonstrated her spondylolisthesis, and how this was creating pressure on her nerves, and spinal column. It was explained that one screw is inserted on either side of each bone, then connected with a short rod on both sides, and a crosslink to hold the vertebrae steady facilitating bone graft consolidation into a solid fusion. Her x-rays were shown to her showing spondylolisthesis and where the screws were to be inserted. It was explained that any operation carries risks including infection, nerve injury, failure to fuse, failure of instrumentation, scar tissue formation, risks of anesthesia, and risks associated with decreased activity after surgery such as blood clots in the legs, lungs, etc. The FDA status of pedicle screws was also discussed, including the controversy over FDA approval and the final situation where most suits were dropped in 1998 after a 1996 cohort study showed superior fusion rates without an increase in complication rate and the FDA reclassified them as class II effective August 26, 1998. She was told it was my opinion that pedicle screws were indicated in her case.

Dr. Pratt's discovery deposition was taken on January 3, 2003. Concerning the pre-operative conversation he had with Ms. Johnson, Dr. Pratt reiterated that he had drawn a picture of the procedure for Ms. Johnson and that he had explained the operation and its risks to her prior to performing the surgery.

The Johnsons filed no response to the "Motion for Summary Judgment," and that Motion was scheduled to be heard on April 25, 2003. On the day of the hearing, the Johnsons' attorney appeared with the "Affidavit of Barbara Johnson," which was also filed on April 25, 2003. In her Affidavit, Ms. Johnson asserts that Dr. Pratt "did not advise of any risks or potential complications from this surgery." Ms. Johnson further contends that "if the risks had been told to me by Dr. Pratt, I would never have consented to the surgery of June 26, 2000."

According to the record, at the time of the scheduled hearing, the Johnsons' attorney informed the court that "she did not yet have an expert, but someone would be engaged 'withing 45 days.'" On April 30, 2003, the trial court entered an Order setting a deadline for the Johnsons to identify an expert by June 9, 2003. On June 6, 2003, the Johnsons filed the "Affidavit of Richard Karsh, M.D." Dr. Karsh's Affidavit reads, in pertinent part, as follows:

> I, Richard Karsh, Radiologist, was in practice in a contiguous state to Tennessee for at least one year prior to June 15, 2000. Further, I solemnly swear that the following information is based upon my review of the medical records, x-rays, and affidavit of Barbara Johnson:
>
> 1. I am a physician fully licensed to practice my profession of Radiology in Tennessee, Virginia, etc.
>
> 2. I am familiar with the standard of professional practice expected of a[n] Orthopedic surgeon as it relates to acquiring the informed consent of a patient preoperatively in a community similar to Memphis, Shelby County, Tennessee.
>
> 3. In my opinion, which is based upon a reasonable degree of medical certainty, the Defendant, Edward Pratt, failed to provide adequate information to allow the patient to formulate an intelligent and informed decision before the installation of pedicle screws.
>
> 4. It is my opinion that the risk of reoccurrence of spondylolisthesis and subsequent screw migration is a primary risk of metal insertion and should have been explained to the patient prior to the installation of the pedicle screws.
>
> 5. The failure of the defendant to fully disclose the risks and to advise the patient of alternatives to the surgery fell below the acceptable standard of care of a practicing physician in communities similar to Memphis, Shelby County, Tennessee.

6. The x-rays reviewed by me revealed a screw resting near the iliac artery and a second surgery was necessary for resolution, resulting in additional pain and expenses to the patient.

On June 12, 2003, Spine Memphis and Dr. Pratt filed "Defendants' Renewed Motion for Summary Judgment" (the "Renewed Motion"). This Renewed Motion was set for hearing on June 20, 2003. The Renewed Motion asks for summary judgment on the grounds that the Johnsons had failed to identify an expert prior to the prescribed deadline.

On June 20, 2003, the Johnsons' attorney appeared at the hearing on the Renewed Motion without having filed any response to either motion for summary judgment (other than Dr. Karsh's Affidavit and Barbara Johnson's Affidavit) and without having filed supplemental responses to the Interrogatories. At that hearing, the Johnsons' attorney requested additional time to file a response to the Motion for Summary Judgment. The court granted the Motion for Summary Judgment but "indicated it would 'consider' a more complete response if submitted by Monday, June 23, 2003, before actually entering an order on the Defendants' motion."

On June 23, 2003, the Johnsons filed a "Response to Defendants' Motion for Summary Judgment" attaching to it a copy of Dr. Karsh's Affidavit and incorporating by reference the Affidavit of Ms. Johnson. On July 15, 2003, the trial court entered its "Memorandum Opinion and Order Granting Summary Judgment" (the "Final Order"). In granting Spine Memphis and Dr. Pratt's Motion for Summary Judgment, the Final Order indicates the following flaws in Dr. Karsh's Affidavit:

(1) The Karsh affidavit is not accompanied by any curriculum vitae. He says he is a radiologist. The issue in the case centers around what information was imparted by the Defendant physician, an orthopedic surgeon, in connection with the use of pedicle screws in the surgical procedure in question. Without more, it is reasonably unlikely that the Court would permit Dr. Karsh to testify as an expert witness at a trial of the cause.

(2) The Karsh affidavit consists of six (6) brief sentences. It contains basically the conclusory assertion that Dr. Pratt "...failed to provide adequate information...." The affidavit does little to address much of the fact specific information set forth in Dr. Pratt's affidavit or his Rule 56.03 statement of "Uncontested Facts."

(3) The Karsh affidavit does not set forth the applicable standard of care for orthopedic surgeons practicing in this or a similar community with respect to explaining the particular surgical procedure in question. Similarly, it does not set forth in what particulars the

Defendants departed from any such standard of care, especially insofar as the use of pedicle screws may be concerned.

(4) Reference is made in Plaintiff's response to deposition testimony of Dr. Pratt. Nowhere does the Karsh affidavit speak to any of the Pratt testimony which is fairly detailed as to what information he imparted to the Plaintiff prior to her surgery. Rather, it would seem that the Plaintiff by implication relies upon her affidavit in which she simply denies what was said by Dr. Pratt in his discovery deposition.

(Footnotes omitted). The Johnsons appeal and raise one issue for review as stated in their brief: Whether the trial court's summary dismissal of Plaintiff/Appellant's Complaint constituted an impermissible expansion of the statutory requirement for expert proof required of a Plaintiff under Tennessee Code Annotated § 29-26-115.

We first note that a motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn.1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *See id.* In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn.1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id*. at 210-11 (citations omitted).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *See Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn.1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *See Bain*, 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *See Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn.1997).

Here, the Johnsons claim a lack of informed consent. A lack of informed consent violation occurs when the patient is aware that a procedure is going to be performed but is unaware of the potential risks associated with the procedure. *See Ashe v. Radiation Oncology Assocs*., 9 S.W.3d 119, 121 (Tenn. 1999); *Blanchard v. Kellum*, 975 S.W.2d 522, 524 (Tenn. 1998). The tort does not

relate to the manner in which the procedure was performed, but rather to the manner in which the physician obtained the patient's consent to perform the procedure. *See German v. Nichopoulos*, 577 S.W.2d 197, 202 (Tenn.Ct.App.1978), rev'd on other grounds, *Seavers v. Methodist Med. Ctr.*, 9 S.W.3d 86 (Tenn.1999). These claims are governed by the medical malpractice statutes. Specifically, T.C.A. §29-26-115 and T.C.A. § 29-26-118. T.C.A. §29-26-115 (Supp. 2004) provides, in relevant part, as follows:

> **§ 29-26-115. Claimant's burden in malpractice action–Expert testimony–Presumption of negligence–Jury instructions.–**
>
> (a) In a malpractice action, the claimant shall have the burden of proving by evidence as provided by subsection (b):
> (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;
> (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
> (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.
>
> (b) No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a), unless the person was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make the person's expert testimony relevant to the issues in the case and had practiced this profession or specialty in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred. This rule shall apply to expert witnesses testifying for the defendant as rebuttal witnesses. The court may waive this subsection when it determines that the appropriate witnesses otherwise would not be available.

T.C.A. § 29-26-118 (2000) provides as follows:

> **§ 29-26-118. Proving inadequacy of consent**– In a malpractice action, the plaintiff shall prove by evidence as required by § 29-26-115(b) that the defendant did not supply appropriate information to the patient in obtaining informed consent (to the procedure out of which plaintiff's claim allegedly arose) in

accordance with the recognized standard of acceptable professional practice in the profession and in the specialty, if any, that the defendant practices in the community in which the defendant practices and in similar communities.

Under the applicable statutes, patients seeking damages for lack of informed consent must prove that the physician's conduct fell below the applicable standard of care and that reasonably prudent persons in the patient's position would not have consented to the procedure if they had been suitably informed of the risks, benefits, and alternatives. *See Ashe v. Radiation Oncology Assocs.*, 9 S.W.3d at 122-23. Consequently, the inquiry in lack of informed consent cases is whether the physician provided the patient sufficient information to enable the patient to make an intelligent and informed decision either to refuse or to consent to the procedure. *See Shadrick v. Coker*, 963 S.W.2d 726, 732 (Tenn.1998). To prove that the information was insufficient, a patient must present evidence that his or her physician failed to disclose information about the risks of the proposed procedure that a reasonable physician would have disclosed under similar circumstances. *See Ashe v. Radiation Oncology Assocs.*, 9 S.W.3d at 121; *German v. Nichopoulos,* 577 S.W.2d 197 (Tenn. Ct. App. 1978). This evidence must take the form of expert testimony because it is clearly beyond the common knowledge of laypersons. *See Bryant v. HCA Health Servs. of Tenn., Inc*., 15 S.W.3d 804, 808-09 (Tenn.2000); *Blanchard v. Kellum*, 975 S.W.2d at 524; *Harris v. Buckspan*, 984 S.W.2d 944, 948 (Tenn.Ct.App.1998).

In the instant case, Spine Memphis and Dr. Pratt filed a Motion for Summary Judgment supported by Dr. Pratt's Affidavit stating that his actions were in conformity with the standard of acceptable professional practice applicable to the circumstance of this case, *see supra.* The burden then shifted to the Johnsons to respond with an expert affidavit sufficient to refute Dr. Pratt's Affidavit, thus creating a dispute of material fact. In the absence of this responsive proof, our Supreme Court has held that summary judgment is proper, to wit:

> ...in those malpractice actions wherein expert medical testimony is required to establish negligence and proximate cause, affidavits by medical doctors which clearly and completely refute plaintiff's contention afford a proper basis for dismissal of the action on summary judgment, in the absence of proper responsive proof by affidavit or otherwise.

*Bowman v. Henard*, 547 S.W.2d 527, 531 (Tenn. 1977).

In opposition to the Motion for Summary Judgment, the Johnsons filed the Affidavit of Dr. Karsh, *see supra.* For those reasons set out in its Final Order, the trial court found that Dr. Karsh's affidavit was deficient and did not meet the burden of proof required by T.C.A. § 29-26-115, as to the recognized standard of acceptable professional practice required of an orthopedic surgeon practicing in Memphis, Tennessee or in a similar community in 2000. Consequently, the trial court found that there was no dispute of material fact and that Spine Memphis and Dr. Pratt were entitled to summary judgment as a matter of law.

Decisions regarding the qualifications or competency of an expert are entrusted to the trial court's discretion. *McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257, 263 (Tenn.1997). Accordingly, appellate courts reviewing a trial court's decision regarding the qualifications or competency of a patient's medical expert employ the "abuse of discretion" standard. *Robinson v. LeCorps*, 83 S.W.3d 718, 725 (Tenn.2002); *Seffernick v. Saint Thomas Hosp.*, 969 S.W.2d 391, 393 (Tenn.1998); *Roberts v. Bicknell*, 73 S.W.3d 106, 113 (Tenn.Ct.App.2001).

As set out above, T.C.A. § 29-26-115(a)(1) requires that a patient's expert in a medical malpractice case must have knowledge of the standard of professional practice in the community where the defendant physician practices or in a similar community. *Robinson v. LeCorps*, 83 S.W.3d 718, 724 (Tenn.2002). The expert is not required to be familiar with all the medical statistics of the community where the physician practices. *Ledford v. Moskowitz*, 742 S.W.2d 645, 648 (Tenn.Ct.App.1987). However, the expert must go further than simply asserting that he or she is familiar with the applicable standard of care. *Mabon v. Jackson-Madison County Gen. Hosp.*, 968 S.W.2d 826, 831 (Tenn. Ct. App. 1997). The expert must present facts demonstrating how he or she has knowledge of the applicable standard of professional care either in the community in which the defendant physician practices or in a similar community. *See Spangler v. East Tenn. Baptist Hosp.*, No. E1999-01501-COA-R3-CV, 2000 WL 222543, at *1- 2 (Tenn.Ct.App. Feb. 28, 2000) perm. app. denied (Tenn. Sept. 11, 2000).

For the purpose of T.C.A. § 29-26-115(a), the only relevant "community" is the community in which the defendant physician actually practices or in a similar community. *Tilley v. Bindra*, No. W2001-01157-COA-R3-CV, 2002 WL 1000196, at *4-5 (Tenn.Ct.App. May 13, 2002) perm. app. denied (Tenn. Nov. 4, 2002). Accordingly, the courts have held that medical experts testifying for a patient in a medical malpractice case may not base their testimony solely on their familiarity with a national standard of professional practice. *Robinson v. LeCorps*, 83 S.W.3d at 724; *Mabon v. Jackson-Madison County Gen. Hosp*., 968 S.W.2d at 831. We have likewise rejected expert testimony based on a state-wide standard of professional practice, *Totty v. Thompson*, 121 S.W.3d 676, 678-79 (Tenn. Ct. App. 2003); *Tilley v. Bindra*, No. W2001-01157-COA-R3-CV, 2002 WL 1000196, at *4 (Tenn. Ct. App. May 13, 2002) (holding that the relevant standard of professional practice is not a nationwide or even a statewide standard of care), as well as testimony premised on a regional standard of professional practice. *Howell v. Baptist Hosp.*, No. M2001-02388-COA-R3-CV, 2003 WL 112762, at *8 (Tenn. Ct. App. May 27, 2003) (holding that an affiant's assertion of familiarity with the applicable standard of professional practice in "Middle Tennessee" did not provide a basis for testifying regarding the standard of professional practice in Nashville).

Dr. Karsh's Affidavit falls short on this requirement in that it does not contain sufficient facts to demonstrate that Dr. Karsh's opinion regarding the applicable standard of professional practice is based either on his familiarity with the applicable standard of professional practice in Memphis, Tennessee or Shelby County or on his knowledge of the applicable standard of professional practice in a community similar to Memphis, Tennessee. Nothing in Dr. Karsh's Affidavit indicates that he has any personal knowledge of the practice of orthopedics in Memphis or Shelby County. Accordingly, his Affidavit can comply with T.C.A § 29-26-115(a)(1) only by demonstrating that he

knows the applicable standard of professional practice in a community that is similar to Memphis or Shelby County.

Although he stated that he is "fully licensed to practice...Radiology in Tennessee, Virginia, etc," Dr. Karsh does not indicate where he actually practices or that such community is similar to Memphis or Shelby County. Rather, Dr. Karsh makes a general statement that "I am familiar with the standard of professional practice expected of a[n] Orthopedic surgeon as it relates to acquiring the informed consent of a patient preopeatively in a community similar to Memphis, Shelby County, Tennessee." Generalizations regarding the similarity of the standards of professional care in two contiguous states are not specific enough information to demonstrate that a medical practitioner is qualified under the locality rule to render an opinion in a medical malpractice case and does not comply with the nonmoving party's burden on a motion for summary judgment to set forth *specific facts*. Accordingly, we affirm the trial court's conclusion that Dr. Karsh's Affidavit did not demonstrate that he was familiar with the applicable standard of professional practice in Memphis or Shelby County during the pertinent time period.

Furthermore, the defendant physician, Dr. Pratt, is an orthopedic surgeon. In his Affidavit, Dr. Karsh indicates that he is a Radiologist. Although there is no statutory requirement that the expert witness practice in the same specialty as the defendant, the witness must be sufficiently familiar with the standard of care of the specialist to be able to give relevant testimony on that subject. *See Goodman v. Phythyon*, 803 S.W.2d 697 (Tenn. Ct. App. 1990). As noted by the trial court, there was no curriculum vitae attached to Dr. Karsh's Affidavit, nor is there anything in the actual document from which we can infer that Dr. Karsh is qualified to testify on the standard of care for orthopedic surgeons. Dr. Karsh's broad statement that he is "familiar with the standard of professional practice expected of a[n] Orthopedic surgeon..." is not, in itself, sufficient to qualify him to testify in this area.

For the foregoing reasons, we affirm the Final Order of the trial court. Costs of this appeal are assessed to the Appellants, Barbara and Paul Johnson, and their surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.
