IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 22, 2012 Session

**GLENA MEARES, et al., v. THOMAS R. TRAYLOR, M.D.**

**Appeal from the Circuit Court for Knox County**
**No. 2-148-08    Hon. Harold Wimberly, Judge**

**No. E2011-02187-COA-R3-CV - Filed July 27, 2012**

Plaintiffs charged defendant with medical malpractice.  The case was tried before a jury, resulting in a judgment for the defendant.  An out-of-state medical doctor testified on behalf of the defendant, over the objection of plaintiffs.  Plaintiffs have appealed to this Court, insisting that it was reversible error for the Trial Court to allow that expert to testify in violation of the "Locality Rule".  On appeal, we affirm the Judgment of the Trial Court.

**Tenn.  R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and JOHN W. MCCLARTY, J., joined.

Dail R. Cantrell, Clinton, Tennessee, for the appellants, Glena and Paul Meares.

David E. Waite and Stephanie D. Coleman, Knoxville, Tennessee, for the appellee, Thomas R. Traylor, M.D.

**OPINION**

Plaintiffs, Glena and Paul Meares, filed a Complaint against Thomas Traylor, M.D., alleging that Dr. Traylor had taken Ms. Meares in for a diagnostic laparoscopy in order to examine her uterus and rule out endometriosis, adhesions, etc., but instead had performed an unauthorized hysterectomy.  Plaintiffs also alleged that Ms. Meares continued to have

medical issues which stemmed from Dr. Traylor's substandard care. Plaintiffs attached the informed consent form which Ms. Meares signed prior to the procedure, which states that "during the course of the operation, unforeseen conditions may require additional surgery immediately. If I need such additional surgery during my operation, I permit Dr. Traylor, his assistants, or his designees to perform such medical or surgical procedures as necessary."

Dr. Traylor answered, and stated he acted in accordance with the recognized standard of acceptable medical care, and stated that during the course of the laparoscopy, unusual and unforeseen circumstances arose which required that he perform a hysterectomy. He alleged that Ms. Meares showed no signs of emotional distress in her follow-up visits with him, and asserted that his care was not substandard, and that he complied with the applicable standard of care.

Dr. Traylor filed a Motion for Summary Judgment, which the Trial Court denied, and the trial was held on August 18, 2011 before a jury. Excerpts from the transcript included the testimony of defendant's expert, Dr. Jose Garcia, who stated that he was an OB/GYN who practiced at the Peachtree Women's Clinic in Atlanta. Garcia testified that Knoxville was a similar community to where he practiced, because he was not in Atlanta Proper, which was a much larger city, but rather practiced in Alpharetta, which had a population similar to Knoxville's. Plaintiffs' counsel objected to Dr. Garcia testifying based on the locality rule, but the objection was overruled. Dr. Garcia testified that he had reviewed the medical records in this case, and felt the consent form signed by Ms. Meares was standard, and that it would allow defendant to do whatever was necessary if complications arose during the laparoscopy. Dr. Garcia said that defendant complied with the applicable standard of care at all times, and that he had to convert the procedure to a laparotomy in order to see what was going on with Ms. Meares. The witness opined that by the time defendant was able to separate the extensive adhesions and scar tissue to see what was underneath, based on the operative notes, her uterus, tubes, and ovaries were not salvageable. He described this as a "horrific" case, and stated that defendant had done everything properly and in Ms. Meares' best interests. Dr. Garcia testified that, based on the consent form, Ms. Meares clearly knew that defendant would be treating any endometriosis/adhesions, if found, because she wrote on the consent form that she understood defendant would "look" and "laser if he needs to". Thus, the procedure was clearly understood to be more than just diagnostic.

Plaintiffs objected to Dr. Garcia's testimony which was based on excerpts from his deposition that were read to the Trial Court, wherein Dr. Garcia explained the basis for his knowledge of the standard of care in what he claimed was a similar community to Knoxville. For instance, in his deposition, Dr. Garcia explained that he worked 50% of the time in Alpharetta and 50% of the time in Sandy Springs, which are basically suburbs of Atlanta Metro, but are their own separate cities. Dr. Garcia explained that this area wherein he

practices has about 400,000-500,000 people, and has four hospitals plus one children's hospital. He testified that the standard of care was the same in Atlanta Metro and Atlanta Proper, and in the Alpharetta/Sandy Springs area. Dr. Garcia testified, however, that there was no such thing as a national standard of care.

Dr. Garcia explained that he had looked at statistical data regarding Knoxville such as population/demographics, number of hospitals, etc., and compared that information to the area wherein he practices. He testified that the available facilities were comparable, and the community demographics similar, such that he felt the communities were very similar. He testified that he didn't personally know anyone who practiced in Knoxville, and didn't know how many OB/GYNs practiced in Knoxville. He provided all of the information he had gathered, which included detailed information on Knoxville and Alpharetta demographics and hospital information. He stated that he had testified as an expert witness 12-15 times previously.

The trial transcript also contains the testimony of defendant, who testified that he warned plaintiff of the risks of laparoscopy (including the possibility of a need arising for more surgery) both verbally and by giving her a brochure to take home and read before she scheduled the procedure. Dr. Traylor testified that he did not specifically discuss a laparotomy with plaintiff, because he didn't have any reason to think that was a possibility based on her symptoms and the fact that she had just had a c-section a few years before where her abdomen apparently looked normal. Dr. Traylor testified that he felt it would have been irresponsible to stop the procedure and go talk to Mr. Meares before doing the laparotomy, when he didn't have any information to give him because he was unable to see what was going on in Ms. Meares' abdomen.

Dr. Traylor testified that when he did the laparoscopy and inserted the camera, he could not see beyond the adhesions and did not know what was going on. He testified that he needed to determine the source of Ms. Meares' pain, and without dissecting the adhesions he could not tell her anything, so she might have been "eaten up" with cancer for all he knew at that point. He testified that once he began to remove the adhesions, they were so substantial and the reproductive organs so necrotic that he basically could not save them, plus plaintiff began to bleed substantially and he had to remove the organs to stop the bleeding.

He testified that before Ms. Meares' ovaries were removed, it was a slight possibility that an egg could have been harvested, but he felt that would have been very difficult if not impossible given her condition. He testified that the pathology report on the tissue he removed showed endometriosis, fibrous adhesions all over Ms. Meares' abdomen, and a cyst on her right ovary.

The transcript also contains the testimony of Dr. McCauley, another expert witness for defendant, who testified that Ms. Meares' symptoms as noted on her chart didn't indicate that Dr. Traylor should have known that she would need a hysterectomy, thus there was no reason to have discussed that with her prior to the laparoscopy. Dr. McCauley testified that the consent form stated that there could be unforeseen complications requiring surgery, and that this language was in there in case they found something they didn't expect. Dr. McCauley testified that Dr. Traylor had no choice but to proceed to laparotomy based on the patient's condition, and that he had an obligation to dissect the adhesions and see what was going on in her abdomen.

One of the trial exhibits is the deposition of Dr. Emily Evitt, a later treating physician of Ms. Meares, who testified that she saw Ms. Meares from 2008 to 2010, and saw her for annual exams and hormone therapy. She testified that she was aware of Dr. Traylor by reputation, and that he was highly thought of, and that she had had more than one case wherein she had to convert a laparoscopy to a laparotomy. She stated she had treated endometriosis, and that it could be life-threatening, as it could cause perforations of the colon, as well as pain and infertility.

The Trial Court entered a Final Judgment and Order dismissing the action, asserting that after deliberation, the jury found for defendant. Plaintiffs filed a Motion for New Trial, arguing defendant's expert, Dr. Garcia, was not qualified to testify under the "locality rule". The motion was denied. Plaintiffs then filed a Notice of Appeal.

The single issue raised on appeal was whether the Trial Court erred by allowing the testimony of the defendant's expert, Dr. Jose Garcia, who was not properly qualified pursuant to Tenn. Code Ann. §29-26-115(a)?

Tenn. Code Ann. §29-26-115 provides as follows:

(a) In a malpractice action, the claimant shall have the burden of proving by evidence as provided by subsection (b):

(1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;

(2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and

(3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

(b) No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a), unless the person was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make the person's expert testimony relevant to the issues in the case and had practiced this profession or specialty in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred. This rule shall apply to expert witnesses testifying for the defendant as rebuttal witnesses. The court may waive this subsection (b) when it determines that the appropriate witnesses otherwise would not be available.

Plaintiffs argue that Dr. Garcia should not have been allowed to testify because he did not qualify under the so-called "locality rule" contained in subsection (a), as he did not demonstrate that he practiced in a similar community.

Both parties rely to some extent on the Supreme Court's recent decision in *Shipley v. Williams*, 350 S.W.3d 527 (Tenn. 2011), a case which deals extensively with the "locality rule" and an expert's qualifications to testify in a malpractice action. Plaintiffs point out that the opinion in *Shipley* was handed down immediately after the trial in this case; however, the only changes that *Shipley* made to the existing case law on this subject had to do with whether an expert could testify to a "national" standard of care, and also with the "personal, first-hand knowledge" requirement that had developed in the Western Section , but neither of these issues were implicated in this case. *Id.*

*Shipley* deals with a situation where the plaintiff's experts were disqualified from testifying based on Tenn. Code Ann. §29-26-115, and thus summary judgment was granted to defendant. *Id.* The Supreme Court began its analysis regarding whether the trial court abused its discretion in disallowing plaintiff's experts' testimony by examining the so-called "locality rule" contained in Tenn. Code Ann. §29-26-115 and the case law interpreting the same. As the Court observed, "[f]ew areas of American Jurisprudence have been more challenging through the years than the development of the standard of care applicable in medical malpractice cases." *Shipley,* at 539, *quoting Totty v. Thompson*, 121 S.W.3d 676 (Tenn. Ct. App. 2003). The Court provided an extensive history of the case law on the subject, examining 15-20 cases that have been decided by Tennessee courts over the last 25 years. *Id.*

The Court then stated:

Our review of Tennessee Code Annotated section 29–26–115 and pertinent Tennessee case law since 1986 leads us to several conclusions. First, subsection (b) of Tennessee Code Annotated section 29–26–115 sets forth the three requirements for an expert witness to be competent to testify in a medical negligence case. The witness must be (1) "licensed to practice in the state or a contiguous bordering state," (2) "a profession or specialty which would make the person's expert testimony relevant to the issues in the case," and (3) must have "had practiced this profession or specialty in one ... of these states during the year preceding the date that the alleged injury or wrongful act occurred." Therefore, the only grounds for disqualifying a medical expert as incompetent to testify are (1) that the witness was not licensed to practice in Tennessee, Georgia, Alabama, Mississippi, Arkansas, Missouri, Kentucky, North Carolina, or Virginia; (2) that the witness was not licensed to practice a profession or specialty that would make the person's expert testimony relevant to the issues in the case; or (3) that the witness did not practice this profession in one of these states during the year preceding the date of the alleged injury or wrongful act. Tenn.Code Ann. § 29–26–115(b).

*Shipley v. Williams*, 350 S.W.3d 527, 550 (Tenn. 2011).

The Court then examined subsections (a) and (b) of Tenn. Code Ann. §29-26-115 and explained that these two subsections "serve two distinct purposes", such that "subsection (a) provides the elements that must be proven in a medical negligence action and subsection (b) prescribes who is competent to testify to satisfy the requirements of subsection (a)." *Id.* The Court went on to state that "when determining whether a witness is competent to testify, the trial court should look to subsection (b), not subsection (a)." *Id.*

The Court also explained that challenges to the <u>admissibility</u> of testimony from a medical expert who was competent to testify under subsection (b) could be based on the Tennessee Rules of Evidence, specifically Rules 702 and 703. *Id.* The Court stated the "trial court should admit the testimony of a competent expert unless the party opposing the expert's testimony shows that it will not substantially assist the trier of fact or if the facts or data on which the opinion is based are not trustworthy pursuant to Rules 702 and 703." *Id.* at 551. The Court went on to explain that, in its role as "gatekeeper", the trial court should determine whether (a) the expert meets the requirements of Tenn. Code Ann. §29-26-115(b), and whether the testimony meets the admissibility requirements of Rules 702 and 703. The Court said that once these minimum requirements are met, "any questions the trial court may have about the *extent* of the witness' knowledge, skill, experience, training, or education pertain only to the weight of the testimony, not to its admissibility." *Id.* at 551 (emphasis in original).

The Court then explained that a trial court's decision to accept or disqualify an expert medical witness was reviewed under an abuse of discretion standard, and the Court expressly noted that this was not a deviation from prior case law.

The Court then addressed the requirements of the locality rule, stating:

The statute does not require a particular means or manner of proving what constitutes a "similar community," nor does it define that term. Principles of stare decisis compel us to adhere to the requirement that a medical expert must demonstrate a modicum of familiarity with the medical community in which the defendant practices or a similar community. **Generally, an expert's testimony that he or she has reviewed and is familiar with pertinent statistical information such as community size, hospital size, the number and type of medical facilities in the community, and medical services or specialized practices available in the area**; has discussed with other medical providers in the pertinent community or a neighboring one regarding the applicable standard of care relevant to the issues presented; **or** has visited the community or hospital where the defendant practices, **will be sufficient to establish the expert's testimony as relevant and probative to "substantially assist the trier of fact to understand the evidence or to determine a fact in issue" under Tennessee Rule of Evidence 702 in a medical malpractice case and to demonstrate that the facts on which the proffered expert relies are trustworthy pursuant to Tennessee Rule of Evidence 703.**

*Shipley v. Williams*, 350 S.W.3d 527, 552 (Tenn. 2011)(emphasis added). Justice Holder's concurrence points out:

Dr. Rerych's competency to testify pursuant to Tennessee Code Annotated section 29–26–115(b) was undisputed. The pertinent issue therefore is whether Dr. Rerych's opinion of the standard of care in Nashville or a similar community was based on sufficiently trustworthy facts or data so that it would substantially assist the trier of fact in determining the applicable standard of care. As stated in the majority opinion, Dr. Rerych testified in his deposition as to specific facts supporting his assertion that he is familiar with the applicable standard of care. It is not necessary that the trial court agree with Dr. Rerych. It is only necessary that the trial court find that Dr. Rerych has the appropriate qualifications pursuant to Tennessee Code Annotated section 29–26–115(b) and Tennessee Rule of Evidence 702 and that he bases his opinion on trustworthy facts or data as required by Tennessee Rule of Evidence 703. The trial court must bear in mind that Dr. Rerych's testimony would be subject to "vigorous cross-examination and countervailing proof." The trier of fact, not the trial

court, bears the responsibility of weighing expert testimony and resolving "legitimate but competing expert opinions."

*Id*. at 559(citations omitted).

Upon consideration of the teachings in *Shipley,* we conclude that the Trial Court correctly allowed Dr. Garcia to testify because his testimony was both competent and admissible pursuant to Tenn. Code Ann. §29-26-115 and the Rules of Evidence. Examining the requirements of Tenn. Code Ann. §29-26-115(b), which the Supreme Court directs us to do in determining whether an expert witness is competent to testify, Dr. Garcia practiced in a contiguous state (Georgia), was licensed to practice in a profession/specialty which made his testimony relevant to the issues in the case (OB/GYN), and he practiced in that state and this profession/specialty in the year preceding the date of the alleged injury. These facts are undisputed.

Moreover, Dr. Garcia's testimony was admissible pursuant to T.R.E. 702 and 703 because he testified that he was familiar with the standard of care in a community similar to Knoxville based on having reviewed and being familiar with "pertinent statistical information such as community size, hospital size, the number and type of medical facilities in the community, and medical services or specialized practices available in the area". Dr. Garcia provided a large folder of information that he had reviewed and familiarized himself with regarding the statistics and demographics of Knoxville, including community size, population, number and size of hospitals in the area, etc., and this was the basis for his opinion that Knoxville was a similar medical community to the Alpharetta/Sandy Springs area where he practiced. He testified that the community/population sizes were similar, the demographics were similar, there were a similar number of hospitals of like size, etc. Accordingly, it was well within the trial Court's discretion to allow Dr. Garcia's testimony as it was both competent and admissible pursuant to the governing statute and rules of evidence.

Any questions as to the weight to be given Dr. Garcia's testimony were properly submitted and decided by the jury. We affirm the Judgment of the Trial Court and remand, with the costs of the appeal assessed to the plaintiffs, Glena and Paul Meares.

_____
HERSCHEL PICKENS FRANKS, P.J.